JOHNSON & JOHNSON, COLGATE-PALMOLIVE-PEET COM-
PANY AND LAMBERT PHARMACAL COMPANY, PLAIN-
TIFFS-APPELLANTS, v. HARRY WEISSBARD AND MAX
WEISSBARD, PARTNERS TRADING AS WEISSBARD
BROS., DEFENDANTS-RESPONDENTS.

BURROUGHS WELLCOME & CO. (U. S. A.) INC., PLAINTIFF-
APPELLANT, v. HARRY WEISSBARD AND MAX WEISS-
BARD, INDIVIDUALLY AND TRADING AS WEISSBARD
BROS., DEFENDANTS-RESPONDENTS.

Argued November 24, 1952—Decided March 2, 1953.

*Mr. Joseph H. Stamler* argued the cause for appellant Johnson & Johnson (*Messrs. Lorentz & Stamler*, attorneys).

*Mr. Edward J. O'Mara* argued the cause for appellant Colgate-Palmolive-Peet Company (*Messrs. O'Mara, Schumann, Davis & Lynch*, attorneys).

Mr. *William H. Osborne, Jr.*, argued the cause for appellant Lambert Pharmacal Company (*Messrs. Pitney, Hardin & Ward,* attorneys).

Mr. *Leo Blumberg* argued the cause for appellant Burroughs Wellcome & Co. (U. S. A.) Inc. (*Messrs. Gross & Blumberg,* attorneys).

Mr. *Sanford Freedman* argued the cause for respondents (*Mr. Samuel Kaufman* and *Mr. John M. Kaufman* on the brief; *Messrs. Bilder, Bilder & Kaufman,* attorneys).

The opinion of the court was delivered by

HEHER, J. The issues here are ruled by the principles applied in the companion cases of *Johnson & Johnson v. Charmley Drug Co.,* 11 *N. J.* 526, and *Hoffmann-LaRoche Inc. v. Weissbard Bros.,* 11 *N. J.* 541.

The judgments or orders under appeal vacated injunctions directed to defendants, prohibiting the advertising for sale, offering for sale, and the sale at retail of trademarked and branded pharmaceutical preparations, surgical dressings and bandages, medicated toilet articles, and like commodities severally produced, sold and distributed by plaintiffs, at less than the retail prices established by plaintiffs for the trade "from time to time" pursuant to the New Jersey Fair Trade Act. *R. S.* 56:4–3 *et seq.* The injunctions issued in accordance with final decrees of the old Court of Chancery entered June 1, 1937 on a bill of complaint tendered by the plaintiffs in A–53, Johnson & Johnson, Colgate-Palmolive-Peet Company, and Lambert Pharmacal Company, and on June 23, 1941 on the complaint of the plaintiff in A–54, Burroughs Wellcome & Co. (U. S. A.) Inc. *Johnson & Johnson v. Weissbard Bros.,* 121 *N. J. Eq.* 585 (*E. & A.* 1937); *Burroughs Wellcome & Co. (U. S. A. ) Inc. v. Weissbard Bros.,* 129 *N. J. Eq.* 563 (*Ch.* 1941), affirmed 130 *N. J. Eq.* 605 (*E. & A.* 1942).

Defendants are noncontracting retailers. They invoke the Sherman Anti-Trust Act of July 2, 1890 (26 *Stat.* 209, *c.* 647; 15 *U. S. C. A. sec.* 1), following the holding of the

United States Supreme Court in *Schwegmann Bros. v. Calvert Distillers Corporation*, 341 *U. S.* 384, 71 *S. Ct.* 745, 95 *L. Ed.* 1035, 19 *A. L. R.* 2d 1119 (1952), that the immunizing provision of the Miller-Tydings amendment of the Sherman Act adopted August 17, 1937 (50 *Stat.* 673, 693, *c.* 690; 15 *U. S. C. A., sec.* 1) has reference to voluntary contracts or agreements prescribing minimum resale prices for the specified commodities in interstate commerce and does not encompass "nonsigners."

It is said that the motions to vacate the injunctions were improvidently granted for want of a ground recognized by *Rule* 3:60–2. "Mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," "fraud, misrepresentation, or other misconduct of an adverse party," are ruled out; and it is urged that the underlying decrees are not void for want of jurisdiction of the subject matter or the parties. But the rule also provides that a final judgment or order may be vacated where, subdivision (5), "it is no longer equitable that the judgment or order should have prospective application," or, subdivision (6), for "any other reason justifying relief from the operation of the judgment or order," and these provisions comprehend the grounds advanced here.

Quite apart from the rule, a court of equity has inherent jurisdiction to vacate or modify an injunction when by reason of a subsequent alteration in the rights and interests of the parties or a change of circumstances, the continued enforcement of the injunctive process would be inequitable, oppressive, or unjust, or in contravention of the policy of the law. *Milk Wagon Drivers Union v. Meadowmoor Dairies*, 312 *U. S.* 287, 61 *S. Ct.* 552, 85 *L. Ed.* 836 (1941). An injunction is necessarily ambulatory. Its remedial efficacy varies with time and circumstance; and it is controlled accordingly to serve the ends of essential justice. Even without a reservation of power to modify the decree for an injunction,

"power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events

may shape the need. * * * The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. * * * The result is all one whether the decree has been entered after litigation or by consent. * * * In either event, a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act. A different view would not help them, for they were not parties to the contract, if any there was." *United States v. Swift & Co.*, 286 U. S. 106, 52 S. Ct. 460, 462, 76 L. Ed. 999 (1931).

See, also, *Ladner v. Siegel*, 298 *Pa.* 487, 148 *A.* 699, 68 *A. L. R.* 1172 (*Sup. Ct.* 1930).

But it is said in A–53 that neither in·the notice of the motion to vacate the injunction nor in the stipulation is it shown that "it would have been grossly unjust or inequitable to continue the effectiveness of the Injunction"; and that the Miller-Tydings Act "had absolutely no effect upon the decree entered prior to its passage," and the "determination of the constitutionality" of the State Fair Trade Act by the Court of Errors and Appeals "has been in no wise affected by the *Schwegmann* decision."

 Where compliance with the injunction of the state court would result in the restraint of interstate trade interdicted by the Sherman Act, the injunction must be vacated in keeping with the Supremacy Clause of the United States Constitution. *Article VI, paragraph* 2. The cases cited *contra* are not in point. It goes without saying that a continuing injunction commanding adherence to a price-maintenance arrangement in violation of the Sherman Act has no legal force or vitality. First principles make imperative the dissolution of an injunction that intrudes upon the exclusive area of federal action. There is no element of discretion involved; ˙state surrender to federal sovereignty is in such circumstances an obligation absolute and peremptory. In the field of intrastate activities state law is supreme if otherwise

constitutionally sufficient; but there is no contention here (A–53) of commerce essentially intrastate or that the lifting of the restraint would constitute the abdication of state sovereignty.

But in A–54 interstate commerce is denied. Burroughs Wellcome & Co. contends that only intrastate commerce is involved, and the doctrine of the *Schwegmann* case has no application. The point is not well made. In this regard, the case is not unlike *Hoffmann-LaRoche, Inc. v. Weissbard*, cited *supra*.

■ The plaintiff producer and distributor is a New York corporation whose principal office and place of business is in the City of New York. The distribution of its products also is a nationwide operation for the marketing of the goods under a uniform minimum price standard, if such be attainable by contracts and agreements made pursuant to the several state fair trade laws, for the protection of the good will symbolized by trademarks and tradenames; and interrelated intrastate activities to that end constitute a component of the interstate marketing process. This plaintiff maintains a "fair trade department" in its New York establishment; and there its fair trade agreements with retailers both within and without the state are consummated. There, also, distribution is made of its price schedule, as it varies from time to time, uniformly applicable throughout the Union. This plaintiff's own bill of complaint avers that its commodities and the identifying trademarks "have been widely and extensively advertised, both in the State of New Jersey and in the United States, and an extremely valuable good will as a consequence of the advertising and of the intrinsic merit of the preparations and products attaches to them." Indeed, the plaintiff does not dispute its engagement in interstate commerce and price fixing on a national scale. The specific point is that the sales at retail constitute a purely intrastate activity. But the sales to the consumer on the local level are of the very essence of the interstate process. The retail market is the outlet for goods distributed in interstate commerce under a uniform price formula designed, as just

said, to afford nationwide protection of plaintiff's good will. There is no discernible line of separation between the interstate and the intrastate operation. It is an integrated whole.

Such is plaintiff's own conception of the scheme. The price standard is an economic measure nationwide in scope for the integrity of the marketing process and the security of its good will. This regulation of the local market relates to the whole of the commerce in the goods between the states. It is an integral part of a larger policy that depends for its consummation upon activity which directly affects commerce between the states; and thus the price standard is an instrument of policy that falls for want of conformance to the criterion of the Sherman Act. *United States v. Frankfort Distillers, Inc.*, 324 *U. S.* 293, 65 *S. Ct.* 661, 89 *L. Ed.* 951 (1945).

Finally, it is urged in A–53 that the New Jersey Fair Trade Act constitutes an exertion of the State's police power and "plaintiffs' cause of action in tort remains unimpaired by the construction of the Miller-Tydings Amendment."

The reasoning is that the State Fair Trade Act "does not pretend to fix prices or to permit the fixation of prices in another state," but "deals only with the resale of the product in New Jersey and makes no distinction between products purchased within or without the State." The argument made in the companion case of *Hoffmann-LaRoche, Inc. v. Weissbard*, is reiterated; and there is no occasion to add to what was said there.

We are not called upon to assess plaintiffs' rights under the McGuire Act adopted by the Congress July 14, 1952, after this appeal was taken. *Public Law*, 542, *c.* 745, *H. R.* 5767. The statute is not invoked here. See the companion case of *Hoffmann-LaRoche, Inc. v. Weissbard.*

Judgments affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN —6.

*For reversal*—None.