71 N.J. Super. 413 (1962)
177 A.2d 273
THE TEXAS COMPANY, A DELAWARE CORPORATION, PLAINTIFF-RESPONDENT,
v.
MARCO DI GAETANO, T/A MARCO'S SERVICE STATION, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided January 11, 1962.
*416 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. David A. Biederman argued the cause for defendant-appellant (Messrs. Bilder, Bilder & Freeman, attorneys; Mr. Walter J. Bilder, of counsel).
*417 Mr. Amzy B. Steed of the New York bar, admitted pro hac vice, argued the cause for plaintiff-respondent (Messrs. Katzenbach, Gildea & Rudner, attorneys; Mr. Milton Handler, Mr. Stanley D. Robinson, and Miss Cecelia H. Goetz, of the New York bar, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from an order dated December 21, 1960 denying his motion to vacate a final judgment entered in the Chancery Division January 20, 1958 which enjoined his violation of a price resale schedule maintained by plaintiff for the retailing of its gasoline products pursuant to the New Jersey fair-trade statute. R.S. 56:4-3 et seq., as amended (originally enacted by L. 1935, c. 58). Defendant's basic position is that to permit the injunction to continue to operate against him is to tolerate a violation of the important federal public policy against restraint of trade codified by the Sherman Act, encompassing price-fixing agreements within its condemnation. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). It is argued that plaintiff's imposition of fair-trade upon retailers of its products is not saved from invalidity by the Miller-Tydings amendment of the Sherman Act, 15 U.S.C.A. § 1 (1958), adopted in 1937, and the McGuire amendment of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a) (1958), adopted in 1952, permitting state fair-trading legislation, because plaintiff is in contravention of the express condition thereof that the parties to the resale price arrangement not be in competition with each other. The contention is that such competition exists here between plaintiff and defendant in respect of sales to industrial and commercial users of gasoline, thereby barring the right to injunctive relief under the interpretation of the controlling federal legislation in Esso Standard Oil Company v. Secatore's, Inc., 246 F.2d 17 (1 Cir. 1957), cert. denied 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957).
*418 The trial judge denied relief, taking the position that the same defense had been passed upon when final judgment was entered January 20, 1958; that "nothing new" was presented to warrant interfering with the judgment; and that the application, which was filed October 28, 1960, came too late. On the present appeal plaintiff defends the action of the trial court not only on the grounds thus relied upon, but also on the basis of the position that the Secatore's case is not here applicable, particularly in view of an intervening modification of its resale price schedule under which sales by retailers to industrial and commercial consumers were exempted. An additional argument  that the controversy is now moot because of a termination of the lease of the defendant's business premises between the parties as of July 31, 1961  will be considered separately at the conclusion of this opinion.
Defendant and his wife leased their Trenton gas station property to plaintiff in 1951 for a term of five years, with an option to renew for an additional term of five years. By agreement, defendant remained in possession of the property as dealer in plaintiff's petroleum products. The lease renewal option was exercised by plaintiff in 1956. On May 11, 1956 plaintiff adopted a resale price-fixing policy for the distribution in New Jersey of its gasoline products marketed under the trade-marks "Texaco," "Sky-Chief" and "Fire-Chief." Pursuant thereto, it entered into a fair-trade agreement with one retailer and gave notice thereof to all others in the State, including defendant, with the resultant obligation on all to comply with the resale prices agreed upon, by virtue of the "non-signer" provision of the New Jersey statute, R.S. 56:4-6, as amended by L. 1938, c. 165, sustained as constitutional in Lionel Corp. v. Grayson-Robinson Stores, 15 N.J. 191 (1954). Defendant concededly sold below the stipulated resale prices, and on August 1, 1957 plaintiff filed its complaint against him in the Superior Court, Chancery Division, in the form of a conventional equity suit for an injunction, reciting in detailed particulars *419 the facts aforementioned, that plaintiff was "without adequate remedy at law," and demanding judgment "that temporary restraint and interlocutory injunction be issued until final hearing" and that "permanent injunction" might issue thereafter against defendant's selling plaintiff's products at prices below its stipulated minimum retail prices and using plaintiff's vending equipment for dispensing "Texaco" products below such prices. The complaint was verified by affidavits of persons who had purchased gasoline from defendant at less than the stipulated resale prices.
On August 7, 1957 an order was entered by a Chancery Division judge temporarily restraining defendant from selling gasoline below plaintiff's stipulated minimum prices or using its branded equipment for that purpose, and requiring him to show cause August 13, 1957 why an order should not be made continuing such restraints "pending final determination and judgment" in the action. On the return date an order was entered by another judge, with the endorsed consent of an attorney for defendant, continuing the restraints until the further order of the court. On November 6, 1957 defendant filed a motion to dissolve or modify the restraint on the ground that plaintiff was "in direct competition" with defendant for commercial accounts, in violation of the "Sherman Anti Trust Act and the Miller-Tydings Amendment thereto in accordance with the decision in Esso Standard Oil v. Secatores, 246 F.2d No. 1, p. 17." This motion was supported by affidavits dated November 6, 1957 of defendant and his son, William Di Gaetano, who was in his employ, stating that plaintiff was "in direct competition" with defendant and other dealers for commercial accounts, mentioning six specific companies in Mercer County, and that plaintiff had salesmen soliciting commercial and industrial accounts "in competition with defendant." Defendant deposed that he sold to commercial and industrial accounts and that plaintiff had "on several occasions in direct competition with [him] weaned away commercial accounts that purchased the plaintiff's products directly from [him]." Plaintiff responded *420 with affidavits of J.J. Finn, its district representative of sales, and Claude E. Wilson, a salesman in its central New Jersey area. Finn conceded plaintiff sold to commercial consumer accounts but said the nature of the transactions was different from that of a service station account in that a service station sells to consumers in small quantities while the commercial accounts were themselves consumers to whom plaintiff delivered in bulk; that plaintiff's policy was not to solicit or serve such commercial accounts unless they purchased at least 5,000 gallons per month, except where their purchase of other of plaintiff's petroleum products made the account profitable. Plaintiff at that time had only five commercial accounts in Mercer County. The Wilson affidavit described defendant's facilities and specified the amount of his 1957 purchases of gasoline by monthly totals. Other affidavits offered by plaintiff tended to negative competition with defendant.
On December 2, 1957, after argument, a third judge of the Chancery Division signed an order denying the motion to dissolve the restraint and continuing the interlocutory injunction in effect. There was no opinion or other indication of record by the judge of the reasons for his action.
On or about December 18, 1957 plaintiff gave notice of an application for entry of an order "entering the default of the defendant for failure to file an answer, answering affidavit or other motion"; and requesting that the action be tried on the pleadings and affidavits and that final judgment be entered thereon for the relief demanded in the complaint. The motion was supported by an affidavit of one of plaintiff's attorneys stating that defendant had been orally directed by the judge who entered the August 13, 1957 restraint to file an answer by September 3, 1957; and by an affidavit of another of plaintiff's attorneys reciting the previous proceedings in the cause, stating that "no answer, answering affidavits or other motion has been filed by the defendant," and averring that the action had been instituted and conducted "pursuant to R.R. 4:85 (Actions *421 On Order To Show Cause In Lieu of Summons)." Final judgment was entered January 20, 1958, after signature by a fourth judge. This recited that "due notice of the application for the entry of a judgment by default, for the failure of the defendant to answer or otherwise defend" had been served on defendant and that no appearance had been made on his behalf. Defendant was thereupon permanently enjoined from selling plaintiff's gasoline at less than plaintiff's established minimum retail prices and from using plaintiff's equipment or trademarks in connection with any such prohibited sales.
The 1960 motion to vacate was prosecuted for defendant by new counsel, and heard by a judge who had not previously signed any order in the matter. It asked that if the court were not satisfied with the supporting affidavits submitted, defendant be granted leave to take depositions. Affidavits by defendant and his son presented essentially the same ground for relief from the injunction as had been urged on the motion to dissolve the restraint in the prior proceedings, i.e., competition by plaintiff with defendant for commercial and industrial consumers. However, what was described as newly discovered evidence was also submitted. The first such item was a notice issued by plaintiff September 3, 1958 amending its New Jersey fair trade price schedule. This exempted therefrom "sales made by Retailer to * * * commercial or industrial concerns or institutional establishments." It was stated in the notice that the "primary purpose" of the exemption was to enable the retailers to meet competition which dealers had informed the company they were faced with from dealers in other brands selling at "lower prices" to buses, trucks, tractors and other commercial vehicles. Retail sales to individually owned passenger vehicles used for pleasure remained subject to stipulated minimum retail prices. From this defendant argued, in effect, that since plaintiff thereby recognized that its retail dealers were conducting a trade in *422 commercial consumer accounts from their stations, its own factually established solicitation of such business was deliberate and substantial competitive activity with such dealers within the scope and effect of the Secatore's case. Implicit in defendant's argument, too, is the position that by the exempting notice plaintiff signified the formalization of its own open drive for commercial and industrial business, plaintiff assuming (but, as defendant argues, without legal justification) that the exemption would enable it to save the fair trade retail price schedules in reference to sales to passenger cars while competing with its retailers for commercial and industrial business.
Additionally, defendant submitted an affidavit by one Howard Hart, a short-haul truck operator, conducting his business out of Trenton, who for years had purchased gasoline from defendant. He deposed that one Heard, an industrial salesman for plaintiff, had solicited him in December 1957 and February 1958, saying he understood he was a customer of defendant's, and offering to sell him "Fire Chief" gasoline at 21.4 cents per gallon although the fair trade price at the time was 25.9 cents. As further evidence of his position, defendant read to the court at the hearing of the motion depositions taken from Heard, the salesman referred to above, given in similar injunction proceedings brought by plaintiff against another of its dealers. Therein Heard candidly admitted the company was soliciting commercial and industrial users in the Trenton area and basing its prices for that kind of business "on the competitive situation in the field." Heard testified he called on Hart in December 1957 and February 1958 and offered him gasoline at "consumer tank wagon prices," which then were 21.4 cents per gallon. Hart told him at the time he was then buying gasoline from defendant.
Plaintiff offered no answering affidavits on the motion to vacate, resting its defensive position on legal grounds and the facts then of record.

*423 I.
It may be observed preliminarily that if the substantive issue were not one affected by a strong element of public policy we might well not be inclined under the existing circumstances to find a mistaken exercise of discretion by the trial court in declining to interfere with the injunction. In proceedings for relief from a final judgment under R.R. 4:62-2, the determination ordinarily rests in the sound discretion of the trial court, controlled by established principles of fairness and equity. Shammas v. Shammas, 9 N.J. 321, 328 (1952); Hodgson v. Applegate, 31 N.J. 29, 37 (1959). Essentially, the legal ground of attack upon the injunction now pressed was the same as on defendant's motion to vacate the preliminary restraint. Then, as now, the Secatore's case was relied upon; then, as now, plaintiff's competition with defendant for commercial and industrial consumer business constituted the factual and legal underpinning for the defendant's defensive posture. Moreover, defendant did nothing about the injunction, either by way of appeal or otherwise, until it instituted the present proceeding, some 33 months later. Viewed as a litigation of purely private scope and impact, defendant's equitable situation vis-a-vis the plaintiff, appraised in the light of policy considerations militating for termination of litigation, might not furnish the strong appeal it would take to overturn the trial court's exercise of discretion. The only ameliorative factor is the possibility, discussed hereinafter, that the degree of plaintiff's competition with defendant might have increased substantially after the injunction was entered.
However, for reasons more fully to be developed later herein, we regard the public interest in the subject matter of this litigation as dictating further procedings in this matter if there is a sound legal basis for the contention that plaintiff's competition with defendant in the regard indicated disqualifies it from continued imposition of fair *424 trade restrictions upon the latter. We thus approach that issue.

II.
The origin and development of so-called fair trade legislation in New Jersey independently of, and, in respect of interstate commerce, pursuant to federal legislative exemptions from the overall prohibition of price-fixing agreements contained in the Sherman Antitrust Act, is fully discussed in General Electric Co. v. Packard Bamberger & Co., 14 N.J. 209 (1953). We need not repeat it here. It need here but be stated that except for and to the extent of the existence of and strict compliance with the terms and conditions of enabling state and federal legislation, price-fixing by agreement or compulsion as to goods flowing in interstate commerce is today just as offensive to the Sherman Act and to the national public policy represented thereby as it ever was. United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). The economic policy implications of compulsive price-maintenance are hotly debated by the experts. For the merest sampling of some opposing views see Adams, "Resale Price Maintenance: Fact and Fancy," 64 Yale L.J. 967 (1955); Herman, "A Note on Fair Trade," 65 Yale L.J. 23 (1955); Herman, "Fair Trade: Origins, Purposes, and Competitive Effects," 27 Geo. Wash. L. Rev. 621 (1959). And in reference to fair trading in respect of gasoline, see case comment 109 U. Pa. L. Rev. 617, 622, nn. 35, 36, 37 (1961). The report of the Attorney General's National Committee to Study the Antitrust Laws, March 31, 1955, recommended repeal of the federal statutory exemption of fair trade pricing "as an unwarranted compromise of the basic tenets of National antitrust policy." (at p. 154). Our own predilections on the subject, did we entertain any, would be irrelevant. We have but to apply and enforce the applicable statutes, as authoritatively construed.
*425 Only by virtue of the Miller-Tydings amendment of the Sherman Act does state-authorized fair trading of goods moving in interstate commerce gain validity; and the compulsive application of such price-maintenance to "non-signers" is validated by the McGuire amendment of the Federal Trade Commission Act, both cited above. Both of these permissive statutes provide, substantially identically:
"That the preceding proviso shall not make lawful any contract or agreement, providing for the establishment or maintenance of minimum resale prices of any commodity herein involved, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other." (Emphasis added)
It is the clause last quoted above which defendant relies upon here. He contends that he and plaintiff are "in competition with each other" for commercial and industrial consumer business, and therefore it is unlawful for plaintiff to seek to hold him to fair trade restrictions on price. If the premise be conceded, the conclusion is clearly supported by Esso Standard Oil Company v. Secatore's, Inc., supra. There, as here, a gasoline producer sought to compel compliance by a gasoline station operator with state-authorized fair trade price restrictions to which he was not a voluntary signatory. The proofs were that the oil company had several hundred "commercial accounts" in Massachusetts. In many cases it installed tanks and pumps for them at its own expense and delivered to them by tank trucks. It charged one cent above its posted "tank wagon" prices. The company actively solicited this kind of business. The opinion of the court does not indicate the extent of the company's business in the classification mentioned in the Boston area, where Secatore's maintained its two stations. That concern had 45 accounts of the commercial type using over 5,000 gallons per year each. It serviced these accounts in the normal way, by filling the vehicles' tanks from the regular station pumps. Thus, as the District Court found, and the *426 Court of Appeals agreed, "there [was] most certainly an area in which the plaintiff and the defendant [were] in competition with each other." Continued the court's opinion (246 F.2d., at p. 20):
"While their competitive techniques are different, one gives less service for a lower price and the other more service for a higher price, the fact remains that each in its own way is striving for the business of supplying gasoline directly to those who operate fleets of motor vehicles. And the area of their competition is not so small that it can be disregarded by application of the de minimis maxim. Nevertheless the plaintiff-appellant contends that its competition with the defendant-appellee does not exclude application of the exculpatory provisions of the Miller-Tydings and McGuire Acts because their competition is not on the same `functional level.' It argues that by application of the rule of ejusdem generis the general language of the concluding phrase, `persons, firms, or corporations in competition with each other,' is controlled by the preceding reference to six specific categories of competitors, and that therefore the phrase alludes only to retailers, wholesalers, etc., who go under another name in commercial jargon, as perhaps `jobbers' or `agents.' Alternatively it argues that in context the final phrase refers only to the type of competition which occurs between retailer and retailer or between wholesaler and wholesaler, and so forth, which it asserts is competition in serving the same `function.' In short, by putting stress on `function' the plaintiff-appellant seeks to distinguish competition in rendering the same service from competition for the same customers." (Emphasis by the court)
The court rejected the arguments thus advanced on the basis of the holding and rationale of the opinion of the United States Supreme Court in United States v. McKesson & Robbins, Inc., 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209 (1956). The Government was there suing a wholesale drug concern for injunctive relief against price-fixing activity contrary to section 1 of the Sherman Act, but sought to be defended as fair trading within the exemption afforded by the Miller-Tydings amendment. The Government claimed the amendment did not apply because the price agreements were "between wholesalers," and thus proscribed by the proviso quoted above. Although concededly a large wholesaler of drug products, the defendant argued its price arrangements were made in reference to products it manufactured itself *427 and marketed under its trade-mark, "McKesson's," and thus the contracts were as though between manufacturer and wholesaler, and not between parties on the same functional level. The Supreme Court rejected the argument, stating that since the parties to the agreements were both wholesalers, the condemnatory proviso of the Miller-Tydings Act applied by its unambiguous language (351 U.S., at pp. 311-312, 76 S.Ct., at 941). In summary, the court in Secatore's said (246 F.2d., at p. 21):
"* * * the exemption accorded by Congress in the Miller-Tydings and McGuire Acts from the ban of the Anti-trust Acts is to be narrowly construed. As we read the long quotation from the McKesson & Robbins case above, `categories or labels' are not the `crucial inquiry.' What is determinative is `whether the contracting parties compete with each other.' The parties before us on this appeal, as we have shown, are in a real sense competing with each other for the business of a not insubstantial class or type of consumers of gasoline. Although their techniques of doing business differ, they are nonetheless competitors, and this excludes application of the exemption from anti-trust legislation."
The plaintiff in Secatore's argued, in the alternative, that even though there was competition between the parties to a limited extent, nevertheless it was entitled to impose fair trade on the dealer as to the separate and major class of business for which they did not compete  i.e., ordinary retail sales to the common run of motorist. The court concluded the qualified position urged could not be accepted in view of the strictness with which the Miller-Tydings and McGuire amendments were construed in the McKesson & Robbins case, supra, and in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951).
Judge Aldrich, concurring in Secatore's, added as a ground of decision that the plaintiff was retailing, in that it was selling to ultimate consumers, and that agreements for price maintenance between retailers were outside the protected ambit of the permissive legislation. Since price-fixing agreements between retailers are invalid per se, irrespective of the *428 area of competition, cf. McKesson & Robbins, supra, even partial relief had to be denied the plaintiff.
In the instant case plaintiff strenuously urges that even if it is regarded as competing with defendant for commercial, etc., consumer business, it ought to be accorded protection in respect of defendant's non-commercial or ordinary "pump" business as it has exempted defendant from its fair-trade restrictions on its commercial and industrial business. It cites General Electric Company v. Hess Brothers, Inc., 155 F. Supp. 57 (E.D. Pa. 1957), which so held. However, this is obviously merely another form of the basic position which was taken alternatively by the plaintiff oil company in Secatore's, and rejected by the court, as indicated above. The decision in Hess Brothers, supra, obviously overlooked this in purportedly distinguishing Secatore's. The Court of Appeals there held, without possibility of reasonable misapprehension, that where parties otherwise bound by permissive law to the fair-trade restrictions imposed by one of them are in competition with each other as to any substantial part of the business of both, although not as to other parts of their respective businesses, fair trading is outlawed in entirety between them as to any kind of business done by either. McKesson & Robbins, supra, hewed to the same rationale, mutatis mutandis, and that decision appears to retain the approval of the Supreme Court. See United States v. Parke, Davis & Co., supra (362 U.S., at p. 47, 80 S.Ct., at p. 513).
The issue here is not, as plaintiff would have it, the validity of the exemption it has promulgated, as such. It is rather whether it may compete with defendant in the exempted area and yet enforce fair trade against it in the non-exempted field. The holding and reasoning in Secatore's require us to hold it may not. No such problem was implicated or considered in Burroughs Wellcome & Co. v. Weissbard, 129 N.J. Eq. 563 (Ch. 1941), affirmed o.b. 130 N.J. Eq. 605 (E. & A. 1942).

*429 III.
Plaintiff urges that defendant had one opportunity to litigate the issue it now presses and should not be afforded a second, especially after the lapse of time here indicated. We have said above that it is the involvement of the public policy underlying the enforcement of the federal antitrust statutes which moves us to entertain the renewed plea. The issue posed transcends the simple matter of the private legal relationships of the parties to this action. This is a restraint-of-trade problem with special implications affecting the entire gasoline-using public. As was said in Johnson & Johnson v. Weissbard, 11 N.J. 552, 556 (1953):
"Where compliance with the injunction of the state court would result in the restraint of interstate trade interdicted by the Sherman Act, the injunction must be vacated in keeping with the Supremacy Clause of the United States Constitution. Article VI, paragraph 2. * * * It goes without saying that a continuing injunction commanding adherence to a price-maintenance arrangement in violation of the Sherman Act has no legal force or vitality. First principles make imperative the dissolution of an injunction that intrudes upon the exclusive area of federal action. There is no element of discretion involved; state surrender to federal sovereignty is in such circumstances an obligation absolute and peremptory."
In Mercoid Corp. v. Mid-Continent Invest. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), an action was brought for contributory infringement of a patent. The defense and counterclaim set forth that the patentee and its licensee had conspired to expand the monopoly of the patent in violation of the antitrust laws. In reply it was contended that defendant knew these facts and failed to raise the issue when an earlier suit had pended involving the validity of the patent, thereby barring it by res judicata. The court refused to entertain the argument. It said that the grant of an injunction "would aid in the consummation of a conspiracy to expand a patent beyond its legitimate scope." (320 U.S., at p. 670, 64 S.Ct., at p. 273) *430 To grant the relief requested would be contrary to policy. Determination of policy was not "at the mercy of the parties" nor dependent on the usual rules governing private litigation. "`Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" (Ibid., emphasis added) It was held that the parties could not foreclose the courts from the exercise of their discretion in respect of the protection of a public interest by the failure to interpose a defense in earlier litigation. (Ibid.)
In Gulf Oil Corporation v. Mays, 401 Pa. 413, 164 A.2d 656 (Sup. Ct. 1960), where an action was brought, as here, to enjoin a retailer against selling below stipulated fair-trade prices, it was held that the interests of the state in seeing that unlawful price-fixing is not indulged in is of such importance that the mere admission by the dealer in its answer that plaintiff's product "was in fair and open competition" with gasolines produced by others, as required by the statute, was not sufficient to establish the fact. The action was remanded to require plaintiff to establish the fact by proof. The present defendant argues that the Mays case merely indicates hostility of the Pennsylvania court toward fair trade, and points by contrast to the decision in Fried v. Kervick, 34 N.J. 68 (1961), as indicating its value "against destructive price competition among gasoline dealers." We are not necessarily in accord with everything said or decided in Mays. In this regard, see the comment on Mays in 49 Cal. L. Rev. 540, 541 (1961). We do emphasize its proper accenting of the public interest in price-fixing. Nor was anything to the contrary said by our Supreme Court in Fried. The court there was passing upon the constitutionality of the state statute prohibiting the sale of gasoline below posted pump prices. N.J.S.A. 56:6-2 (e). The opinion of the court is an example of the appropriate efforts of the judiciary to find factual bases for sustaining the validity of legislation. It *431 is equally the duty of the courts to enforce legislation, whether state or federal, particularly where the interests of the public at large are concerned. And when faced by a request that they do so, they are not at liberty to stay their hands because of private reservations concerning the wisdom of the legislation. Short of unconstitutionality, or of problems of interpretation, the policy behind the legislation is not a judicial concern. Here our concern must be the enforcement of the Sherman Act, if what plaintiff is doing violates it. Speaking of resale price maintenance activity in violation of federal law, Mr. Justice Brennan said, in United States v. Parke, Davis & Co., supra (362 U.S., at p. 48, 80 S.Ct., at p. 514): "The courts have an obligation, once a violation of the antitrust laws has been established, to protect the public from a continuation of the harmful and unlawful activities."

IV.
Certain procedural impedimenta are pointed out by plaintiff as barring defendant's path. Foremost is the allegation that relief from the continuing effect of an injunction will not be granted, even if continued enforcement of the injunctive process would contravene the policy of the law, unless there is shown a "subsequent alteration in the rights and interests of the parties or a change of circumstances," citing Johnson & Johnson v. Weissbard, supra (11 N.J., at p. 555). The language quoted does express a normal concomitant of the right to such relief. In the case cited, the only change of circumstance was an intervening decision of the United States Supreme Court holding "non-signers" not bound by fair trade restrictions (a holding subsequently nullified by the McGuire Amendment, cited above). We think the "change of circumstance" rule is not to be regarded as an absolutism, but as a weighty guide to the exercise of discretion in a particular case, and varying in influence as the facts of the case more seriously project issues of public *432 policy. This seems implicit in the philosophy of the Mercoid Corp. decision, supra, to the effect that a court will not permit defaults or shortcomings personal to the private litigant to prejudice a determination protective of the public interest. We do not think the pursuit by the court of the public interest in the enforcement of the antitrust statutes and the public policy they represent should be deterred by defendant's feeble resistance in the earlier proceedings, whatever the comparison of circumstances then and now obtaining.
But we are of the view that the showing on the current application may well foreshadow a substantial change of circumstances on the adducing of full proofs on remand. As indicated by Secatore's, supra, competition may not be spelled out where it is so slight as to be "de minimis." Plaintiff's affidavits in resistance to the original motion to vacate the temporary restraint stated it had only five commercial accounts in all of Mercer County. This may have been de minimis in relation to defendant's business in that category. But the fact that plaintiff deemed it prudent to promulgate the exemption of this kind of business in 1958, taken together with other evidence of its solicitation thereof, may well justify an inference that further proofs may show a substantial growth of plaintiff's business in the claimed competitive area and thus a more substantial degree of competition therein with retailers than existed previously  sufficient to overcome the de minimis rule.
Aside from the foregoing, it is to be noted that judgment here was entered by default, and while such a judgment is conclusive as an adjudication between the parties of whatever is esesntial to support the judgment, it is conclusive only as to such matters or issuable facts as were properly averred in the complaint. Girard Trust Co. v. McGeorge, 128 N.J. Eq. 91, 101 (Ch. 1940). A judgment by default does not estop a defendant as to matters which he might have affirmatively pleaded. Phillips v. Phillips, 118 N.J. Eq. 189, 192 (Ch. 1935), reversed on other grounds, *433 119 N.J. Eq. 462 (E. & A. 1936), and affirmed in part, 119 N.J. Eq. 497 (E. & A. 1936). In the original proceedings defendant did not plead the defense of competition between the parties. True, he argued it on a motion to vacate, but proceedings on interlocutory motions for or against restraints ad interim do not adjudicate the merits of any issue in controversy. 28 Am. Jur., Injunctions, § 278, p. 790; § 287, p. 800; Paragon Distributing Corp. v. Paragon Laboratories, 99 N.J. Eq. 224 (Ch. 1925). Resistance to an order for an interlocutory injunction is not tantamount to resistance to the complaint. Elgart v. Mintz, 124 N.J. Eq. 133, 135 (Ch. 1938). Appearance by a defendant on a motion to show cause for an ad interim stay brings the parties before the court for the limited purpose only of determining whether the stay should issue, not for the purpose of a final judgment. Armour v. Armour, 142 N.J. Eq. 337, 338 (E. & A. 1948).
It is clear that in the present case the final judgment was not, nor did it purport to be, an adjudication or determination of the defense of competition between the parties, as that subject was not encompassed by the complaint, and both the notice of application for default judgment and the supporting affidavit stated, as already indicated, that defendant had failed "to file an answer, answering affidavit or other motion." The judgment itself recited that its entry was sought because of defendant's failure to answer or otherwise defend.
In a strict sense, therefore, it may well be that the circumstances calling for comparison in the present case under the conventional rule that a change in circumstances must be shown to support relief from the continuing unjust, inequitable or contrary-to-policy effect of an injunction, are those in the affidavits annexed to the complaint and those shown on the application to vacate the injunction. For the reasons earlier stated herein, however, we need not determine the point.

*434 V.
The data submitted to the trial court in the affidavits and other proofs on the application to vacate is not conclusive of the issue of disqualifying competition. In particular, more light is needed on the extent of the business of both parties with commercial, industrial or other accounts of the type plaintiff solicits, so that, as indicated above, it may be determined whether the issue is de minimis, as it was held not to be in Secatore's (246 F.2d, at p. 20). There should be a plenary hearing of the whole issue of competition between the parties, as there was in the cited case.

VI.
Plaintiff contends that since the lease of the premises expired July 31, 1961, the issue is moot. We invited supplemental affidavits and memoranda on the point and have considered them. There is a legal dispute between the parties over defendant's continued use of the "Texaco" pumps; plaintiff claims a right to the equipment, defendant that plaintiff may not remove them if the premises or station building will be damaged in the process. In the meantime, plaintiff has brought no action to recover its property, or to restrain defendant's use of the equipment to dispense gasoline to customers. Moreover, according to affidavits of defendant and his son, gasoline produced by Texaco is being purchased by the son from an independent source and sold to customers from the pumps marked with plaintiff's trade name. The son allegedly pays the defendant rent on the basis of gallonage of gasoline sold. As the injunction applies to defendant and his agents, etc., and all persons acting under his authority and control, and enjoins use of the vending equipment for sale of Texaco products at below stipulated fair trade prices, defendant apparently remains subject to the injunction notwithstanding termination of the lease on the present state of facts. That defendant can avoid the *435 injunction by selling the products of a different company, or discontinuing business entirely, as plaintiff argues, does not necessarily serve to make the controversy moot. If the sale of Texaco gasoline from defendant's premises is not otherwise unlawful, plaintiff's right to hold him to the existing injunction would appear to depend upon its not competing with him.
Should the proofs on the remand indicate that defendant is no longer in the gasoline business, plaintiff might be able to argue that it is for that reason alone not in competition with him. Conceivably defendant might, on the other hand, be in a position to urge that such a conclusion should have the consequence of relieving him from the injunction insofar as it prohibits sales. However, we imply no fixed opinion on any of the matters mentioned in the present point of this opinion. They are left to the trial court for disposition on a fuller factual showing.
Reversed and remanded for further proceedings in conformity with this opinion.