579 F.2d 289
 In the Matter of John Smith McMILLAN, John S. McMillan, John McMillan,
Bankrupt. (D. C. No. B-75-150 In Bankruptcy) In the Matter
of Mary McMILLAN, Bankrupt. (D. C. No. B-75-151
In Bankruptcy)
Appeal of FREEDOM FINANCE CO., INC.
 No. 77-1566.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) Feb. 13, 1978.
Decided June 21, 1978.
 
 John S. Giava, Newark, N. J., for appellant.
 Paul C. Gretchyn, Ocean-Monmouth Legal Services, Inc., Toms River, N. J., for appellee.
 Before GIBBONS and HUNTER, Circuit Judges and WEBER,* District Judge.
 OPINION
 WEBER, District Judge.
 This case raises the question of whether a bankrupt's creditor has made a prima facie case that his claim is nondischargeable under 11 U.S.C. § 35(a)(2) (Supp.1977)[1] by introducing into evidence only the state court record and default judgment grounded in fraud.[2]
 Appellees John and Mary McMillan filed voluntary petitions in bankruptcy on January 27, 1975, and were duly adjudicated bankrupt and released from all dischargeable debts. On April 2, 1975, the appellant, Freedom Finance Company, filed in bankruptcy court a complaint which sought to have the McMillans' obligation to it declared nondischargeable. In support of this claim, appellant argues that a default judgment by the Ocean County, New Jersey district court that the bankrupts had been guilty of fraud in failing to disclose the full amount of their indebtedness when applying to Freedom Finance for a loan, as a matter of law, compelled a determination that the debt in question was nondischargeable. After this issue was briefed and argued by the parties, the bankruptcy judge ruled that he was
 "still bound to ascertain for . . . (himself) that the elements of an exception to dischargeability established by § 17a(2), have been fully proven by the Plaintiff. This cannot be accomplished by mere reference to the wording of an earlier judgment. Rather this court must review the prior proceedings and determine whether Plaintiff has shown the elements of conduct required of the Bankrupt. . . . "
 under that section.[3]
 At the hearing on this claim, appellant failed to produce any proof other than the Ocean County judgment and record and, having found this insufficient, the bankruptcy judge dismissed the complaint and held the debt to be dischargeable. On appeal, the district court adopted the opinion of the bankruptcy judge and affirmed.
 Prior to 1970, a bankruptcy court granted the bankrupt a general discharge but did not rule on whether any specific obligation was nondischargeable on statutory grounds. Any judgment creditor could seek to enforce or execute on his claim in the appropriate forum, which would litigate the issue of dischargeability if the bankrupt raised his discharge as a bar. To do this, the court would examine the record of the judgment sought to be enforced to determine the nature of the judgment. In 1970, Section 17 c was amended to its present form. The effect of this change was to vest in the bankruptcy court exclusive jurisdiction to determine the dischargeability of debts allegedly falling within 17 a(2). See Herzog, Bankruptcy Act and Rules, 1975 Collier Pamphlet Edition at 61. The problem in this case, then, involves two analytically separate questions:
 (1) Apart from any special nature of a bankruptcy case, what is the collateral estoppel effect of the state court judgment in this case on the bankruptcy proceedings?
 (2) If the doctrine of collateral estoppel would apply so that the bankrupt could be barred from relitigating facts necessary to the judgment rendered by the state court, do the federal policies in bankruptcy cases supersede the policy of finality of judgments represented by the doctrine of collateral estoppel?
 One of the recent cases on collateral estoppel in this Circuit is Haize v. Hanover Insurance Co., 536 F.2d 576, 579 (3d Cir. 1976) wherein the doctrine was defined as follows:
 "Restatement of Judgments § 68(1) (1942) states:
 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . .'.
 Thus, there are at least four requirements which must be met before collateral estoppel effect can be given to a prior action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) That issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." (footnotes omitted).[4]
 At this point, an examination of what actually happened in the state court proceedings is illuminating. Freedom Finance Co. commenced that action with a complaint which alleged that:
 "2. On or about September 21, 1973, defendants borrowed money from plaintiff and executed a promissory note therefor upon which note a balance of $1,082.37 is past due and owing, inclusive of accrued interest.
 3. That before making said loan defendants submitted their statement in writing showing all their outstanding obligations and listed 3 debts totalling $2480, on which plaintiff relied.
 4. That in truth and in fact defendants had 7 or more obligations totalling over $10,000.
 5. Had plaintiff known the truth it would not have made such a loan.
 6. That plaintiff has been damaged in the sum of $1,082.77 by defendants' misrepresentation." Appendix at 10.
 At the hearing, appellant's president testified substantially to this effect and added that, in a telephone conversation, John McMillan had admitted that he had known of the debts which had not been listed in the loan application at the time of its submission.
 From this, two conclusions must be drawn. First, Freedom Finance did not adequately plead in the state court complaint elements required by § 17 a that either of the McMillans had made the false representations knowing at the time that they were false and with the intention and purpose of deceiving the creditor. Public Finance Corp. of Redlands v. Taylor, 514 F.2d 1370 (9th Cir. 1975). Second, even if the proof at trial was sufficient to justify a finding by the trier of fact that John McMillan had had such knowledge and intent, no proof was offered that Mary McMillan had also committed "actual fraud involving moral turpitude," Wright v. Lubinko, 515 F.2d 260, 263 (9th Cir. 1975).[5]
 In any case, we conclude that, because the bankrupts did not "actually litigate" the Ocean County case, not even facts which were necessary to that judgment can collaterally estop them from relitigating the same issues in the bankruptcy case. This holding is consistent both with general rules of collateral estoppel and with the federal policies in bankruptcy cases. See Vol. 1B Moore's Federal Practice P 0.419(3. 6), at p. 3121.
 The theory underlying the doctrine of collateral estoppel, as well as res judicata, is that, as between the parties and their privies, an issue need and should be judicially determined only once. Where the bankrupt or his trustee has actually litigated a suit prior to the determination of factually related issues in bankruptcy court, the collateral estoppel principle should and does apply in accordance with the requirements of Haize, supra. However, the preponderant view is that preferred by the Restatement, especially in comments d and e to Section 68 (1942): a default judgment has no collateral estoppel effect.[6]
 "To invoke the doctrine of collateral estoppel in default causes is not only an oppressive application of the doctrine, but it misconceives the nature of a default judgment.
 The defendant in a suit should not be compelled, at his peril, to embark on extensive litigation involving perhaps some minor matter 'in order to prevent the operation of a judgment which would be held conclusively to have established against him every material fact alleged and not denied in the declaration, so as to preclude him from showing the truth if another controversy should arise between the same parties.' There may be various reasons why the defendant does not wish to contest a suit . . . In any event a default judgment should be given the precise effect it merits. It should, of course, be conclusive in a subsequent suit on the same cause of action involving the same parties or their privies. But it should not, in a subsequent suit on another cause of action between the parties preclude the litigation of issues not litigated in the defaulted action, whether alleged or not. A plaintiff 'cannot justly complain that the defendant has not seen fit to set up defenses and raise issues for the purpose of enabling him to settle facts for future possible controversies.' " Vol. 1B Moore's Federal Practice P 0.444(2) at 4006-07 (footnotes omitted).
 This is in accordance with the approach preferred by the treatise writers dealing with this question in the bankruptcy context, who advocate a rule allowing the bankruptcy court to relitigate factual issues determined by the state court in every § 17 a(2) case. See Volume 1A Collier on Bankruptcy, (14th Ed.), P 17.16, pp. 1650-1650.3; Cowan's Bankruptcy Law and Practice, Supplement, § 433 at p. 102 (1973). Clearly, adoption of the result urged upon us by the appellant giving full collateral estoppel effect to all facts necessarily determined by a prior default judgment would in bankruptcy court determinations under § 17 a(2)
 " . . . necessarily defeat a major federal policy of granting exceptions to discharge only in certain circumstances specified by the bankruptcy Act . . .
 The court also wishes to point out that creditors should not be encouraged to go into state courts prior to bankruptcy seeking default judgments based upon fraud. Such a circumstance would create an injustice greater than that which the 1970 amendments were intended to cure."
 
 
 1
 Opinion of the Bankruptcy Judge, Appendix at 45-46. For these reasons the order of the court below will be affirmed.
 
 
 2
 GIBBONS, Circuit Judge, concurring.
 
 
 3
 I agree that the order of the district court must be affirmed. In all cases covered by 28 U.S.C. § 1738, federal courts must give state court judgments the same full faith and credit they have in the state of origin. In this case, the collateral estoppel effect of the Ocean County District Court judgment is determined by the law of New Jersey. In Texas Co. v. Di Gaetano, 71 N.J.Super. 413, 432, 177 A.2d 273, 283 (1962), the Superior Court of New Jersey, Appellate Division, stated the effect to be given a prior default judgment:
 
 
 4
 it is to be noted that judgment here was entered by default, and while such a judgment is conclusive as an adjudication between the parties of whatever is essential to support the judgment, it is conclusive only as to such matters or issuable facts as were properly averred in the complaint. Girard Trust Co. v. McGeorge, 128 N.J.Eq. 91, 101, 15 A.2d 206 (Ch. 1940). A judgment by default does not estop a defendant as to matters which he might have affirmatively pleaded. Phillips v. Phillips, 118 N.J.Eq. 189, 192, 178 A. 265 (Ch. 1935), reversed on other grounds, 119 N.J.Eq. 462, 183 A. 220 (E. & A. 1936), and affirmed in part, 119 N.J.Eq. 497, 183 A. 222 (E. & A. 1936).
 
 
 5
 As the majority correctly observes, Freedom Finance did not adequately plead in the state court complaint all the elements required to avoid discharge by section 17a of the Bankruptcy Act, 11 U.S.C. § 35. Under New Jersey law the McMillans are, therefore, entitled to a fresh determination of dischargeability by the bankruptcy court.
 
 
 6
 But I find no reason to rest our decision on New Jersey law. Even if state law on the preclusive effect of the judgment were to the contrary (which it is not), I would vote to affirm the order of the district court in this case. Section 1738 is not without exceptions. Federal habeas corpus is one illustration of the proposition. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In my opinion, this is another.
 
 
 7
 In 1970 Congress amended the Bankruptcy Act in order to eliminate certain abuses by finance companies. Under the unamended Act the bankruptcy court had determined whether to grant a discharge, but state courts had been able later to determine whether any given claim had survived discharge because it was founded on a materially false statement intended to deceive. The 1970 amendments were designed to make the bankruptcy court the sole forum for the determination of the dischargeability of a certain type of debt:
 
 
 8
 (a) type of debt held by a finance company against a nonbusiness bankrupt which, through tactics often found abusive of the bankruptcy discharge, survives the discharge in a subsequent suit which the bankrupt failed to defend, for one reason or another.
 
 
 9
 1A Collier on Bankruptcy P 17.15, at 1628.2 n.45c (14th ed. 1973). See also H.R.Rep. No. 91-1502, 91st Cong. 2d Sess. (1970), reprinted in (1970) U.S.Code Cong. & Ad.News, p. 4156.
 
 
 10
 The issue in this case is whether a finance company holding the same type of debt can evade the congressional intent by securing a state court judgment against a delinquent borrower in anticipation of his bankruptcy. I think that the answer should be no, and that we should admit an exception to the federal duty to recognize state court judgments imposed by § 1738. When Congress expressly identifies an abuse, when it has the constitutional power to correct it, and when as here it exercises that power, then the courts should give the congressional act its full effect. While I agree with the majority's analysis as far as it goes, I would prefer to rest the affirmance on this more fundamental reason.
 
 
 
 *
 Honorable Gerald J. Weber, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 § 35. Dischargeability of debts Debts not affected by discharge
 (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . .
 (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive or for willful and malicious conversion of the property of another.
 11 U.S.C. § 35(c) sets forth the procedure for the determination of dischargeability.
 
 
 [2]
 The text of the state court judgment was as follows:
 "It is, on this 11th day of December, 1974:
 ORDERED that judgment be and is hereby entered against the defendants in the sum of $1,082.77 plus costs of $14.40 and attorney's fees of $36.65.
 It is furthered Ordered, that said judgment is grounded in fraud and misrepresentation on the part of the defendants."
 
 
 [3]
 Opinion by Amel Stark, Bankruptcy Judge, reproduced at p. 39 of the Appendix
 
 
 [4]
 In its Tentative Draft no. 1 (1973), the ALI has proposed the following revised version of Section 68
 "Issue Preclusion General Rule
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."
 
 
 [5]
 The bankruptcy judge, after reviewing the state court transcript and pleadings, concluded that Freedom Finance had failed satisfactorily to demonstrate that:
 "(1) Defendant made such representations knowing they were false;
 (2) Defendant made such representations with the intention and purpose of deceiving the Plaintiff;
 (3) Plaintiff actually relied upon such misrepresentations; and
 (4) Plaintiff suffered damage as the proximate result of such representations having been made." Appendix at p. 43.
 He further noted that Freedom Finance Co.'s 1973 loan to the McMillans was the sixth to them in a period of five years and intimated that this fact cast doubt on the appellant's ability to prove that it had relied on the misrepresentations in the 1973 application in making that loan.
 As to points 1, 3 and 4, however, it seems to us that the testimony offered at the state court hearing would have been sufficient to support findings against the McMillans on these points.
 
 
 [6]
 We have read and considered those cases cited to us by appellant on this point and find in them nothing to the contrary. While a default judgment does have a res judicata effect which bars either party from again litigating the Same cause of action, as held by the court, in for example, Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929), the appellant has here, as in other sections of its brief, confused res judicata and collateral estoppel