**In re Edward Brice MORRISON, Shelly Renea Morrison, Debtors.**

**HAMILTON BANK OF UPPER EAST TENNESSEE, Plaintiff,**

v.

**Edward Brice MORRISON, Defendant.**

Bankruptcy No. 3–89–03683.
Adv. No. 90–3049.

United States Bankruptcy Court,
E.D. Tennessee.

June 29, 1990.

**136**

Jerry S. Jones, Johnson City, Tenn., for plaintiff.

Hampton & Hampton, Bill Hampton, Elizabethton, Tenn., for debtor.

MEMORANDUM ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The plaintiff, through this adversary proceeding, seeks a determination that the

sum of $16,007.13 awarded it under the terms of a "Final Judgment" entered March 16, 1989, in the Law Court for Johnson City, Tennessee, against the debtor, Edward Brice Morrison, is nondischargeable.[1] Nondischargeability is premised on Bankruptcy Code § 523(a)(2)(A) and/or (6).[2]

On May 21, 1990, the plaintiff filed a "Motion For Judgment On The Pleadings And/Or Motion For Summary Judgment" (Motion). This Motion is supported exclusively by an unauthenticated copy of the record on file in the Law Court for Johnson City, Tennessee, in that certain matter styled *Hamilton Bank of Upper East Tennessee v. Edward Morrison,* Civil Action No. 12163. The debtor does not dispute the accuracy of the state court record notwithstanding the inadmissibility of that record in its present form.[3] For purposes of the Motion before it, the court will consider the authenticity of the state court record to be stipulated by the parties.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West Supp.1990).

**I**

The sole issue presented by plaintiff's Motion is the collateral estoppel or preclusive effect to be given the "Final Judgment" entered in the Johnson City Law Court on the issue of nondischargeability under § 523(a)(2)(A) and (6). The state court record establishes the following

1. As originally filed the plaintiff's complaint sought relief against both debtors. On May 23, 1990, an order was entered dismissing Shelly Renea Morrison as a party-defendant.

2. Section 523 provides in material part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

....

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement re-

specting the debtor's or an insider's financial condition;

....

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C.A. § 523 (West 1979 & Supp.1990).

3. Fed.R.Civ.Proc. 56(e), incorporated into Fed. R.Bankr.P. 7056, provides for the filing of affidavits in support of a motion for summary judgment. The rule states that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *See* Fed.R.Evid. 901 & 902.

facts: [4]

1. The plaintiff commenced its state court proceeding on June 27, 1988. The complaint filed against the debtor contains the following averments:

## COMPLAINT

Comes now HAMILTON BANK OF UPPER EAST TENNESSEE and for cause of action alleges the following:

1. The defendant is justly indebted to the plaintiff in the amount of $11,439.66 as of June 22, 1988, the date this complaint was drafted, pursuant to the terms of a note executed by the defendant on behalf of the plaintiff dated June 30, 1986 which note is in default. The note bears interest at the rate of 12% per annum, which calculates to $2.95 per day.

2. The said note was the result of a consolidation of obligations owing to the plaintiff and one of the notes was originally dated October 31, 1985 for the purchase of a 1981 Chevrolet Blazer motor vehicle, bearing manufacturers identification number 1G8EK18H5BF139177, which vehicle had a fair market value of approximately $9,500.00.

3. The vehicle which the defendant purchased was a stolen vehicle and he surrendered the same upon demand by the State of Tennessee and recovered the purchase price from the dealer, L & L Motors and converted the proceeds for some purpose other than to repay the indebtedness owing to plaintiff.

4. After the defendant had so converted the funds he told the loan officer at Hamilton Bank, Gary Morrell, that he had not received any of the proceeds from the confiscated vehicle and procured the consolidation loan as aforesaid.

PREMISES CONSIDERED your plaintiff demands the following relief:

a. That the defendant be served with process and be required to answer this complaint.

b. That the court determine that the defendant wrongfully converted the proceeds which were subject to a security interest and that the conversion was deliberate and intentional, done wrongfully, consciously and knowingly in the absence of just cause or excuse and enter judgment against the defendant and in favor of the plaintiff in the amount of $11,439.66 plus interest at the contract rate of 12% per annum from and after June 22, 1988 and reasonable attorney's fees, all as provided for in the said consolidated note and that the court award punitive damages in the amount of $2,000.00 for a total of $13,439.66, plus interest, attorney['s] fees, and the costs of the cause.

c. That a jury be empanelled to try the issues in this cause.

The complaint is signed on behalf of the plaintiff by its attorney, Jerry S. Jones.

2. The debtor was properly served with process.

3. The plaintiff filed a "Motion For Judgment By Default" on September 27, 1988.

4. The debtor filed an answer to the complaint on September 27, 1988. This answer contains the following response:

## ANSWER

DEFENDANT FOR ANSWER TO THE COMPLAINT admits, avers and denies as follows:

1. Defendant admits that he is indebted to the Plaintiff under the terms of a Note executed on June 30, 1986. Defendant does not have enough information at this time to admit or deny the remaining allegations of the Complaint and therefore same are denied.

2. In response to the averments of Paragraph 2 of the Complaint, Defendant admits that the aforesaid Note was the result of a consolidation of obligations owing to the Plaintiff consisting of four unsecured notes bearing various dates. Defendant avers that said consolidation was to reduce his monthly payments to a

---

**4.** The record furnished by the plaintiff consists entirely of pleadings and documents occupying thirty-three (33) pages. Only those documents deemed material to a resolution of the collateral estoppel issue before the court will be discussed.

reasonable amount. The remaining averments contained in Paragraph 2 of the Complaint are denied although it is admitted that Defendant used the money from one of the unsecured notes to repay a Texas Instruments Credit Union loan for the purchase of a certain 1981 Chevrolet Blazer.

3. In response to the averments of Paragraph 3 of the Complaint, it is admitted that Defendant unknowingly purchased a stolen vehicle which was surrendered upon demand of law enforcement officers. It is further admitted that several months later the purchase price was recovered from the seller of the vehicle, L & L Motors. Defendant specifically denies that he converted the proceeds of this repayment for any purpose since the indebtedness owing to Hamilton Bank was never secured by the stolen vehicle and further that the indebtedness used to repay Texas Instrument's Credit Union was extinguished by the consolidation note executed June 3, 1986.

4. The averments contained in Paragraph 4 of the Complaint are denied.

5. All other averments not specifically are now denied. [sic]

NOW HAVING FULLY ANSWERED THE COMPLAINT the Defendant, Edward B. Morrison, prays that same be dismissed with costs to Plaintiff.

The Answer was signed on behalf of the debtor by his attorney, Evan M. Meade.

5. Evan M. Meade filed a motion on December 5, 1988, requesting that he be permitted to withdraw as the debtor's counsel.

6. A "Judgment By Default" was entered December 12, 1988. This "Judgment By Default" provides as follows:

## JUDGMENT BY DEFAULT

This cause came on to be heard on the 28th day of September 1988 before the Honorable Lynn W. Brown, Circuit Court Judge for Washington County at Johnson City, Tennessee on the Plaintiff's Motion for Judgment by Default, statements of counsel in open court and the record as a whole, from all of which the court finds as follows:

1. The Complaint was filed in this cause on June 27, 1988 and served on the Defendant on July 13, 1988.

2. The Defendant had until August 12, 1988 to enter an appearance, and while he failed to enter an appearance during that period of time, he did contact Evan Meade prior to that date, who attempted to reach Mr. Jones by telephone to request an extension of time; however, the attorneys were unable to communicate by telephone until after the time to answer had passed.

3. When the attorneys did make telephonic contact, Mr. Jones agreed to extend the time for the Defendant to file a responsive pleading until September 23, 1988.

4. The Defendant then wrote Mr. Meade a check to retain his services, but stopped payment thereon.

5. On September 27, 1988 the Plaintiff filed a Motion for Default Judgment and Mr. Jones notified Mr. Meade by telephone that the Motion was set for hearing on September 28, 1988.

6. Thereupon, Mr. Meade notified the Defendant that a Motion had been filed and the Defendant engaged the services of Mr. Meade to resist the Motion and file an answer in the cause, which Mr. Meade did after the Motion for Judgment by Default had been filed.

IT IS ACCORDINGLY ORDERED, ADJUDGED and DECREED that the Plaintiff's Motion for Judgment by Default in the above cause is well taken and the Motion is accordingly granted.

IT IS FURTHER ORDERED that the facts alleged in the Plaintiff's Complaint are taken as confessed and the cause will be set on notice to the Defendant of the Plaintiff's damages.

7. An order was entered December 27, 1988, authorizing Evan Meade to withdraw as debtor's attorney.

8. The plaintiff's attorney, Jerry S. Jones, filed the following Notice on January 17, 1989:

NOTICE

PLEASE TAKE NOTICE that I will appear before the Honorable Richard Johnson, Chancellor, holding the Law Court at Johnson City, Tennessee on March 1, 1989 at the hour of 9 a.m. or as soon thereafter as I may be heard and then and there put on proof of the damages in the above entitled action.

GOVERN YOURSELF ACCORDINGLY.

A certificate of service accompanying the Notice evidences service on the debtor.

9. A "Final Judgment" was entered March 16, 1989, which provides:

FINAL JUDGMENT

This cause came on to be heard on the 1st day of March 1989 before the Hon. Richard Johnson, Chancellor, holding the Law Court at Johnson City, Tennessee by interchange, on the Complaint of the Plaintiff, the Answer filed late by the Defendant, the testimony of witnesses in open court, statements of counsel, the Defendant having been called out three times, but failed to respond, the waiver of the Plaintiff to a trial by jury and the record as a whole, from all of which it duly appeared to the court as follows:

1. On October 31, 1985 the Defendant borrowed the sum of $6,200.00 from Plaintiff and pledged a 1981 Chevrolet Blazer motor vehicle, bearing manufacturer's identification number 1G8EK18H5BF139177, valued at $8,100.00 and the proceeds therefrom as collateral to secure the said indebtedness.

2. The vehicle was stolen and on January 30, 1986 L & L Motors refunded the purchase price of the said vehicle to the Defendant who was under a duty to turn the proceeds over to the Plaintiff, and his failure to do so was deliberate and intentional, done wrongfully, consciously and knowingly in the absence of just cause or excuse.

3. After the wrongful, willful and intentional failure to turn the proceeds over to the Plaintiff, and on June 30, 1986, the Defendant consolidated three loans at Hamilton Bank, one being the obligation owing dated October 31, 1985 secured by the aforesaid motor vehicle, one being dated September 4, 1985 owing by the Defendant and the third being dated July 1, 1985 owing by Renea Gonzalez. The Defendant represented at that time that the motor vehicle had been confiscated and that he had not received any money from any source for the confiscation, and at the time he made the said representation and fraudulent concealment he knew that the representation was false, the representation constituted a material misrepresentation and the concealment, coupled with the misrepresentation was made with the intention and purpose of deceiving the creditor, the creditor reasonably relied on that misrepresentation and sustained loss and damages as a proximate result of the misrepresentation and concealment and the failure of the Defendant to account for the proceeds of the said motor vehicle.

IT IS ACCORDINGLY ORDERED, ADJUDGED and DECREED as follows:

a. That the Plaintiff have judgment against the Defendant in the amount of $12,180.11 for the balance owing on the indebtedness on March 1, 1989.

b. That the Plaintiff have its reasonable attorney's fees in the amount of $1,827.02.

c. That the Plaintiff have punitive damages against the Defendant for the sum of $2,000.00.

d. That the judgment shall bear interest at the contract rate of 12% per annum until fully paid.

e. That the costs of the cause are taxed against the Defendant.

f. That execution may issue unless the judgment is paid within the time allowed by law.

The "Final Judgment" was approved for entry by plaintiff's attorney and contains a certificate evidencing service on the debtor.

The record from the Johnson City Law Court contains no transcript of any testimony considered by the Judge prior to entry

of the "Judgment By Default" on December 12, 1988, or prior to entry of the "Final Judgment" on March 16, 1989.

## II

Applying principles enunciated by the Sixth Circuit in *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), this court has previously noted:

> Under the doctrine of collateral estoppel, estoppel by judgment, or issue preclusion, a judgment on the merits in a prior law suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action in [a] later suit between the same parties, though the later suit involves a different cause of action. Three elements must be present for the prior judgment to have collateral estoppel effect: (1) the precise issue sought to be precluded was raised in the prior proceeding; (2) the issue was actually litigated; and (3) the determination of the issue in the prior action was necessary and essential to the outcome.

*Newton v. Herskowitz (In re Gatlinburg Motel Enterprises, Ltd.)*, 106 B.R. 492, 499 (Bankr.E.D.Tenn.1989) (quoting *Hardin v. Caldwell (In re Caldwell)*, 60 B.R. 214, 218 (Bankr.E.D.Tenn.1986)).

In *Spilman,* the Sixth Circuit reversed the judgment of the district court affirming a bankruptcy court decision holding that a judgment creditor was collaterally estopped from asserting that the debtor acted willfully or maliciously and that the debt was discharged. The record before the bankruptcy court consisted solely of the state court judgment. The Sixth Circuit held:

> Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome.

> . . . .

> Thus, before applying the doctrine of collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment. . . .

> . . . .

> If the state record does not show the issue was necessarily and actually litigated in the prior non-bankruptcy proceeding, collateral estoppel is inapplicable.

656 F.2d at 228–29 (citations omitted).

In reversing the judgment of the district court, the Sixth Circuit remanded the case with directions to the district court "to remand to the Bankruptcy Court to determine by looking at the entire state court record if the issue of willful and malicious action ... was actually litigated and was necessary to the state court decision." 656 F.2d at 229.

The principles enunciated by the Sixth Circuit in *Spilman* have been restated in *Wheeler v. Laudani*, 783 F.2d 610, 615–16 (6th Cir.1986). *See Ferguson v. Hall (In re Hall)*, 95 B.R. 553 (Bankr.E.D.Tenn.1989).

As a prerequisite to application of the doctrine of collateral estoppel in the instant proceeding, this court must determine if the nondischargeability issues raised in the plaintiff's complaint were actually litigated and were necessary to the decision in the state court. To do this, the court is required to review the entire record of the state court proceeding, not just the "Judgment By Default" and "Final Judgment." *Spilman*, 656 F.2d at 228; *Laudani*, 783 F.2d at 615. If the issues were not actually litigated, then collateral estoppel does not bar relitigation in the bankruptcy court. *Spilman*, 656 F.2d at 228.

In concluding that to invoke collateral estoppel in default judgments would be an oppressive application of the doctrine, the Third Circuit stated:

> The defendant in a suit should not be compelled, at his peril, to embark on extensive litigation involving perhaps some minor matter 'in order to prevent the operation of a judgment which would be held conclusively to have established against him every material fact alleged

and not denied in the declaration, so as to preclude him from showing the truth if another controversy should arise between the same parties.' There may be various reasons why the defendant does not wish to contest a suit.... A plaintiff 'cannot justly complain that the defendant has not seen fit to set up defenses and raise issues for the purpose of enabling him to settle facts for future possible litigation.'

*Matter of McMillan,* 579 F.2d 289, 293 (3d Cir.1978) (quoting Vol. 1B *Moore's Federal Practice* ¶ 0.444[2] at 4006–07).

Bankruptcy Judge Keith Lundin in *Harris Ind. v. Byard (In re Byard),* 47 B.R. 700 (Bankr.M.D.Tenn.1985), has reached a contrary result. After an extensive survey of the law on "full faith and credit," Judge Lundin concluded that the bankruptcy court must give a state court judgment the same preclusive collateral estoppel effect under principles of "full faith and credit" pursuant to 28 U.S.C.A. § 1738 (West 1966),[5] as would be given such judgment under the law of the state in which the judgment was rendered.

In finding the state court default judgment in dispute in *Byard* to be nondischargeable, Judge Lundin concluded:

> There is nothing about the issues here sought to be precluded which suggests intervention of any strong federal bankruptcy policy prohibiting application of § 1738. Fraud, conversion, and misapplication of funds are issues well within the regular competence and experience of state courts. Under these circumstances, it is the holding of this court that there is no compelling statement of federal bankruptcy law which would expressly or impliedly forbid application of § 1738 to give issue preclusive effect to this default judgment.

47 B.R. at 707.

Judge Lundin premised his conclusions on his determination that the principles of "full faith and credit" under 28 U.S.C.A.

§ 1738 (West 1966) had, since the Sixth Circuit's decision in *Spilman,* undergone "intensive reexamination and clarification in several recent Supreme Court opinions." 47 B.R. at 701. He observed that the rule as stated by the Supreme Court is that "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." 47 B.R. at 701–02 (quoting *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984)); citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

Judge Lundin concluded that since *Spilman* was decided by the Sixth Circuit prior to the developments in the law of "full faith and credit" as set forth by the Supreme Court in *Kremer, Migra, McDonald,* and *Marrese,* the Sixth Circuit would now approach the collateral estoppel issue differently. This court observes, however, as did Chief Bankruptcy Judge Ralph Kelley in *Hall,* 95 B.R. at 555, that after *Byard* was decided, the Sixth Circuit applied the identical rules of collateral estoppel enunciated in *Spilman* to the state court judgment before it in *Laudani.* The Sixth Circuit in *Laudani* did not mention *Byard* nor did it discuss the Supreme Court decisions relied upon by Judge Lundin. Instead, it reaffirmed the collateral estoppel rules enunciated in *Spilman.* This court will adhere to the principles enunciated by the Sixth Circuit in *Spilman* and *Laudani.*

■ The court is confronted with a state court "Judgment By Default" entered December 12, 1988, and a "Final Judgment" entered March 16, 1989. The "Judgment By Default," which was dispositive of the issue of the debtor's liability in the state

---

5. Section 1738 of title 28 provides in material part:

> The ... judicial proceedings of any court of any such State.... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State....

court action, contains no findings and appears to have been entered exclusively on the strength of the averments contained in the plaintiff's complaint. Conversely, the "Final Judgment" emanating from the March 1, 1989 hearing which the debtor was apprised would relate solely to the issue of damages, contains findings primarily pertinent to averments contained in the plaintiff's complaint relative to the issue of liability. The findings set forth in the "Final Judgment" are, for the most part, conclusory and superfluous to the issue of damages.

Finally, there is no trial court transcript for this court to review. Such a transcript is essential if the court is to determine (1) the standard of proof required by the state court as a prerequisite to its entry of the "Judgment By Default"; [6] and (2) whether the elements essential to a determination of nondischargeability under Bankruptcy Code § 523(a)(2)(A) and/or (6) have been established by the plaintiff. In fact, the issues essential to a determination of nondischargeability under § 523(a)(2)(A) and/or (6) were not actually litigated in the state court proceeding.

The Sixth Circuit in *Spilman* observed:

The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to ... redetermine all the underlying facts. As the Court held in *Brown* [7], where the facts necessary for a dischargeability determination

were not necessary to the determination in the prior judgment, the parties should not be bound or else the parties would always have to anticipate future bankruptcy proceedings and the state courts would be deciding facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding. In effect, state courts would then be deciding issues directly concerning dischargeability, contrary to congressional intent. However, where the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceeding or that the bankruptcy court will be any more fair or accurate than the state court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. . . .

. . . .

*If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.*

656 F.2d at 227–28 (citations omitted and emphasis added).

The December 12, 1988 "Judgment By Default" and March 16, 1989 "Final Judgment" entered in the Law Court for Johnson City, Tennessee, are not entitled to

---

**6.** A creditor seeking to establish the elements of § 523(a)(2)(A) essential to a determination of nondischargeability must do so by clear and convincing evidence. *Coman v. Phillips (In re Phillips),* 804 F.2d 930, 932 (6th Cir.1986). The court has nothing before it to indicate the stan-

dard of proof required by the state court as a prerequisite to its entry of the "Judgment By Default."

**7.** *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

collateral estoppel effect with respect to the issue of nondischargeability under Bankruptcy Code § 523(a)(2)(A) and/or (6).

## III

Fed.R.Civ.P. 12(c), incorporated into Fed. R.Bankr.P. 7012, provides:

(c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The court will exercise its prerogative and treat the plaintiff's Motion exclusively as one for summary judgment.

Fed.R.Civ.P. 56, incorporated into Fed.R. Bankr.P. 7056, provides at subsection (c) that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...." The plaintiff in the instant proceeding is not entitled to a judgment as a matter of law.

The plaintiff's Motion filed May 21, 1990, will be denied. An appropriate order will be entered.