**In re Allen J. RICHARDS, Debtor.**

**SPESCO, INC., Plaintiff,**

**v.**

**Allen J. RICHARDS, Defendant.**

**FLORS, INC., Plaintiff,**

**v.**

**Allen J. RICHARDS, Defendant.**

**PORTER COUNTY FARM
BUREAU, Plaintiff,**

**v.**

**Allen J. RICHARDS, Defendant.**

**Bankruptcy No. 80–00028–BKC–JAG.
Adv. Nos. 80–0088–BKC–JAG–A, to
80–0090–BKC–JAG–A.**

United States Bankruptcy Court,
S. D. Florida.

Dec. 15, 1980.

Richard W. Smith, Fort Lauderdale, Fla., Johnson & Smith, P.A., Alfred E. Johnson, Johnson & Smith, P.A., Fort Lauderdale, Fla., for debtor.

Duane W. Hartman, Blachly, Tabor, Bozik & Hartman, Valparaiso, Ind., and John

K. Olson, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for plaintiffs.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

These consolidated adversary complaints seek a determination of nondischargeability of certain debts under 11 U.S.C. § 523(a)(2) and were tried on August 5, 1980. At trial plaintiffs also sought to rely on § 523(a)(4). By stipulation, testimony was offered in the form of the depositions of Clarence Powell, Sandra Fasel, Chester Baker, Jerry Lambert, Bill Vaughn, and Allen Richards. In making these findings, the court has considered these depositions, with attached exhibits, and documentary evidence introduced by the parties.

Defendant-debtor, Allen J. Richards, was in 1978 and early 1979 president and a shareholder of Woodbrook Builders, Inc., a corporation constructing homes in Porter County, Indiana. Plaintiffs Spesco, Inc., Flors, Inc., and Porter County Farm Bureau Cooperative Association, Inc. were suppliers of Woodbrook, and were not fully paid at the time Woodbrook became insolvent in 1979, and then went into receivership.

Primarily in late 1978, debtor, as president of the corporation, executed "no unpaid claims" affidavits for a number of residences to enable the corporation to close the sales of those residences. Such affidavits were required by the lender of the purchasers before they would release funds at closing. In fact, for several of those residences, the affidavits were false in that, for each residence, one or more of the creditors had claims outstanding for materials supplied to that residence.

Defendant's testimony was that his duties in the corporation had primarily been in sales and actual construction, while the vice-president and secretary-treasurer, R. Jackson Arnott, handled office management, and Arnott generally signed contracts, checks, and affidavits. One secretary handled all the bookkeeping, with Arnott overseeing the bookkeeping. In October, Mr. Arnott resigned and defendant took over his duties. He was not familiar with the books of the corporation, and relied on information provided by the secretary in executing the affidavits.

The funds received at the closings went into the corporation, and the debtor did not personally and directly receive any proceeds. During this period he made substantial personal loans to the corporation and was a guarantor of another loan to Woodbrook, none of which have been repaid by the corporation.

Under Indiana mechanics' lien law, to perfect his lien, a materialman must record his notice of intent to rely within sixty days of providing the materials, but where a newly constructed home is sold for occupancy by the purchaser, such notice is not effective if recorded after recordation of the deed to the purchaser. Indiana Statutes 32–8–3–1, 32–8–3–3. Although plaintiffs had been supplying materials for many months, none had recorded the necessary notice prior to closing, so no mechanics' liens had attached upon which they might foreclose.

Having no mechanics' liens to foreclose, and seeing dim prospects of recovery from Woodbrook, plaintiffs sought recovery against defendant personally. In three consolidated cases against Woodbrook Builders, Inc., and Allen J. Richards individually in Porter County Superior Court, plaintiffs obtained a default judgment against Richards which recited that defendant's acts constituted obtaining money by false pretenses and by false representations, and that defendant's acts as an officer of the corporation constituted fraud, misappropriation or defalcation. (Plaintiffs' Exhibit No. 1). Plaintiffs admitted at trial that the Indiana State Court judge heard no evidence, but that the default judgment was entered automatically upon their motion for default. No affidavits or other documents are contained in the state court record. Nevertheless, the findings, based on this barren record, go beyond the allegations of the complaint in several particulars. The

judgment recites that Richards executed the affidavits with the intent to deceive, knowing full well that the plaintiffs would not be paid and knowing full well that the loan would not close unless the affidavits were executed. (No loan and no damage to plaintiffs had even been alluded to in the complaint.) It further finds defalcation by Richards in his corporate capacity and finds that his actions constituted obtaining of property by deception from one lawfully in possession, though such had not been alleged in the complaint.

Defendant filed his voluntary petition in bankruptcy on January 10, 1980. He listed plaintiffs as disputed creditors on schedule A–3. Plaintiffs did not file claims and seek only to preserve their Indiana judgment by having it declared nondischargeable.

Excepted from discharge under 11 U.S.C. § 523(a)(2) are debts "for obtaining money ... by false pretenses, a false representation or actual fraud...." and under § 523(a)(4), debts "for fraud or defalcation while acting in a fiduciary capacity...."

Plaintiffs contend that Richards' signing of the affidavits in his capacity as president of a corporation makes his debt to them nondischargeable under subsection 523(a)(4). But this section requires a fiduciary relationship between the debtor and plaintiff and a debt due from the fiduciary in his capacity as fiduciary. Such was not the case here, and plaintiffs' judgment is not nondischargeable under this section.

As to the fraud issue, plaintiffs first assert that under the doctrine of collateral estoppel, now commonly known as issue preclusion, this court is bound for purposes of the dischargeability determination by the recitation of fraud in the Indiana default judgment. We conclude otherwise.

The Fifth Circuit in *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir. 1980), adopting the opinion of the district court, held that:

> ... a bankruptcy court faced with a claim of nondischargeability under § 17 and presented with a state court judgment evidencing a debt is not bound by

the judgment and is not barred by res judicata or collateral estoppel from conducting its own inquiry into the character, and, ultimately, the dischargeability of the debt.

In *Carey* the district and circuit courts upheld a summary judgment determination of nondischargeability only because the debtor in the bankruptcy proceeding did not create any fact issue to dispute the detailed state court judgment recitations.

*Carey* follows *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) in which the Supreme Court held that res judicata would not prevent a bankruptcy court from looking beyond a state court judgment and record, where a state court judgment creditor sought to prevent discharge of that debt on the ground that the debt was based on fraud, deceit and malicious conversion, but where neither the state court judgment nor record showed that such was the basis for the judgment. Factors in the court's decision were the congressional intention to place exclusive jurisdiction of dischargeability questions in the bankruptcy courts instead of state courts, and the likelihood that state law concepts would differ from those under federal dischargeability law. Although dicta, footnote 10 expresses the view that for collateral estoppel to bar relitigation of factual issues in bankruptcy court, the state court determination of such issues would have to apply standards identical to those of federal bankruptcy law.

Prior cases in other circuits dealt more fully with aspects of issue preclusion. The Ninth Circuit in *In re Houtman*, 568 F.2d 651, 653–654 (9th Cir. 1978) concluded:

> The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts.... This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy judge as establishing the non-

dischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts....

In *In re McMillan*, 579 F.2d 289 (3rd Cir. 1978), the Third Circuit considered the elements necessary to a finding of collateral estoppel. It concluded that where a judgment creditor was relying on a default judgment, even where it had put on evidence in the state court case, the debtors had not "actually litigated" the state court case, so that even facts which were necessary to the default judgment could be relitigated in bankruptcy.

Here plaintiffs in the Indiana action did not fully plead the elements required by the Bankruptcy Code, as discussed below. No proof was offered to support or enhance the complaint. Defendant, of course, did not actually litigate any issue. The default judgment is conclusive as to that cause of action between the parties, and defendant is therefore individually liable for the debt of Woodbrook Builders, Inc.[1] However, this court is not precluded from independently deciding the issue of fraud for purposes of the determination of the dischargeability of that judgment debt in this bankruptcy proceeding.

The debts excepted from discharge under 11 U.S.C. § 523(a)(2)(A) are those which arose from the obtaining of money, property, services or credit by false pretenses, a false representation or actual fraud. Here the debtor did not personally receive anything as a result of the false affidavits. However, the corporation of which he was president and a primary shareholder did receive benefit following his executing the affidavits, and the receipt by the corporation can be attributed to him.

Although not many cases have been decided under 11 U.S.C. § 523(a)(2)(A), it was derived from § 17(a)(2) of the Bankruptcy Act, with the addition of actual fraud under § 523. Cases decided under § 17(a)(2) are therefore applicable in interpreting "false pretenses" or "false representations".

■ Under the case law that has developed, even in cases not involving financial statements, before a debt is found to be nondischargeable, the false representations giving rise to it must have known to be false or made with reckless disregard for the truth amounting to misrepresentation, the debtor must have had the intent to deceive, (moral turpitude,) and the creditor must have reasonably relied on the misrepresentations to his detriment. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); *Wright v. Lubinko*, 515 F.2d 260 (9th Cir. 1975); 3 Collier on Bankruptcy ¶ 523.08[4] (15th ed.).

■ Although the evidence is insufficient to find that Richards knew the affidavits to be false at the time they were executed, he acted with such reckless disregard that it was the equivalent of a knowing misrepresentation. While the circumstances of Arnott's leaving the operations, and the financial condition of the company at the time make the debtor's lack of attention to the books understandable, those very circumstances should have put him on notice of the need for greater care in the execution of affidavits. But because of those circumstances we do not infer and cannot find that Richards had the requisite intent to deceive, and specifically, the intent to deceive plaintiffs.

This leads to the major weakness in plaintiffs' case. The false affidavits were not made to plaintiffs, and there was no reliance on the affidavits, reasonable, or otherwise, by plaintiffs. In fact, at that time plaintiffs perfectly well knew facts contrary to those set forth in the affidavits. This paradoxical position is possible because

1. Plaintiffs' cause of action may well have been insufficient and their proof inadequate had the Indiana case been defended, and there may have been defects in personal jurisdiction or other impediments to entry of the judgment, or bases for its being set aside, but defendant did not choose to pursue those avenues.

it was not plaintiffs who provided the money which they allege defendant fraudulently obtained. Instead, plaintiffs' case is premised on their failure to receive payment from the purchasers' bank on the preexisting debt of Woodbrook. Upon analysis, it is apparent that the money which Woodbrook received was not only *not* plaintiffs', but it was rightfully Woodbrook's own money, received from the purchasers for value provided by Woodbrook. True, Woodbrook had a contractual obligation to pay all its creditors, including plaintiffs. But there was no contractual or statutory right of plaintiffs to be paid from the sale proceeds. They had not recorded their notices of intention to rely, and could not thereafter effectively do so, so their claims could not create any cloud on the title or interest of the purchasers or the purchasers' lender. Therefore, the bank's practice of requiring "no unpaid claims" affidavits and of paying subcontractors and materialmen from the proceeds was a gratuitous collection effort on behalf of plaintiffs, and not a requirement which could transmute defendant's actions into fraud against plaintiffs.

Plaintiffs' citation to Indiana statute 32–8–3–15 as creating reliance by plaintiffs is unmerited. That criminal statute does not, as plaintiffs assert, place on defendant a duty to have notified plaintiffs of the payments made by lenders. It does the reverse. It requires a contractor to inform the person providing payment, (here the purchaser or his lender,) of unpaid debts to subcontractors and materialmen, and imposes a criminal penalty if the purchaser or lender suffers a loss by any misrepresentation. In this case there was no suggestion that the purchasers or lenders suffered any loss through Richards' misrepresentations, but if they had, it would not prevent the discharge of Richards' obligations to *plaintiffs*.

Finally, plaintiffs also try to establish Richards' nondisclosure to plaintiffs of the time of the loan closings as a further misrepresentation which led to the debt which is sought to be found nondischargeable. We are not convinced that the defendant had any duty to inform plaintiffs, the failure of which would amount to a misrepresentation. In addition, the alleged fraud in this theory entirely fails to meet the elements enumerated above. The invoices show deliveries made weeks and months prior to the house closings. Nothing defendant did prevented plaintiffs from filing their notices of intention to rely at any time during this period.

The debts of defendant, Allen J. Richards, to plaintiffs, Spesco, Inc., Flors, Inc., and Porter County Farm Bureau, as represented by the Indiana state court default judgment against defendant are therefore not non-dischargeable. As required by B.R. Rule 921(a), a separate judgment is being entered this date pursuant to these Findings and Conclusions.