In re Emil NOURBAKHSH and Marlene Nourbakhsh, Debtors.

Emil NOURBAKHSH, Appellant,

v.

John GAYDEN, Jr., and Miriam Gayden, Appellees.

BAP No. SC–92–1615–AsRO.

Bankruptcy No. 90–05884.

Adv. No. 90–90529.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 17, 1993.

Decided Jan. 10, 1994.

Bernard Edwin Galitz, Poway, CA, for debtors/appellant.

Leslie T. Rubin and Jeffry. A. Davis, Gray, Cary, Ware & Freidenrich, San Diego, CA, for appellees.

Before ASHLAND, RUSSELL, and OLLASON, Bankruptcy Judges.

## OPINION

ASHLAND, Chief Judge:

A creditor who obtained a default judgment in a Florida State Court sued the debtor to determine the nondischargeability of this debt pursuant to 11 U.S.C. § 523(a)(2)(A). The bankruptcy court granted the creditor's motion for summary judgment finding that there were no genuine issues of material fact because of the collateral estoppel effect of the Florida State Court judgment. We affirm.

## STATEMENT OF FACTS

The debtor Emil Nourbakhsh and his affiliated corporation, The Gold Exchange, invested in precious metals for their clients. John and Miriam Gayden placed five orders with Nourbakhsh between 1986 and 1987. Although the Gaydens paid approximately $54,188.71 for the precious metals, they received none.

On May 23, 1988 the Gaydens filed a complaint alleging fraud, civil theft, breach of contract, usury, and violations of Florida RICO statutes against Nourbakhsh and The Gold Exchange in the circuit court of the 18th Judicial Circuit of Brevard County, Florida. On July 1, 1988 Nourbakhsh filed a motion to dismiss the complaint for lack of jurisdiction. On September 15, 1988 the Florida State Court denied the motion, find-

ing that there were sufficient contacts to satisfy jurisdiction requirements.

On October 11, 1988 Nourbakhsh served answers to interrogatories. On October 28, 1988 the Gaydens successfully brought a motion for default in Florida State Court because Nourbakhsh had not served or filed an answer to the complaint within 20 days. The Gaydnes then moved for judgment after default and a hearing was held on November 9, 1988. The Florida State Court entered a judgment after default on December 15, 1988 in the amount of $255,506.13. On April 2, 1990 the Superior Court of the State of California, County of San Diego entered a sister state judgment in the amount of $255,506.13.

Nourbakhsh subsequently filed a Chapter 7 petition in the United States Bankruptcy Court for the Southern District of California on July 13, 1990. The Gaydens filed a complaint to determine whether the judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) on October 17, 1990. On March 5, 1992 the Gaydens filed a motion for summary judgment arguing that Nourbakhsh was collaterally estopped from litigating the issue of fraud. On March 19, 1992 the bankruptcy court granted the motion for summary judgment. Nourbakhsh appeals from that decision.

## ISSUES

Whether the bankruptcy court erred in finding that Nourbakhsh is collaterally estopped from litigating the issue of fraud pursuant to 11 U.S.C. § 523(a)(2)(A) after the Florida State Court issued a default judgment against him for failing to answer a complaint alleging state law fraud.

## STANDARD OF REVIEW

A bankruptcy court's decision to grant summary judgment is reviewed de novo. *Jones v. Union Pac. R.R. Co.*, 968 F.2d 937, 940 (9th Cir.1992); *In re Baird*, 114 B.R. 198, 201 (9th Cir. BAP 1990). An appellate court must determine whether the bankruptcy court correctly found that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Baird*, 114 B.R. at 201.

## DISCUSSION

**I. *A Default Judgment Entered in a Florida State Court Does Not Preclude a Bankruptcy Court From Applying Collateral Estoppel to the Same Issues Alleged in a Discharge Proceeding Pursuant to 11 U.S.C. § 523***

Nourbakhsh argues that the Florida State Court default judgment does not collaterally estop him from trying the issue of fraud in a bankruptcy court. The Supreme Court recently examined issue preclusion in the context of a dischargeability proceeding stating: "[w]e now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). In *Grogan*, the Court unanimously held that the burden of proof for dischargeability complaints is by a preponderance of the evidence. *Grogan*, 498 U.S. at 287–88, 111 S.Ct. at 660. Accordingly, bankruptcy courts are required to apply the full faith and credit doctrine to dischargeability issues such as fraud. *See*, 28 U.S.C. § 1738.

The full faith and credit statute provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738; *see also, Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1984), *reh'g denied*, 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985). The Supreme Court in *Marrese* stated that the full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese*, 470 U.S. at 380, 105 S.Ct. at 1331. In this case the default judgment was entered in a Florida State Court and we therefore look to Florida law to determine the elements of collateral estoppel.

The elements of collateral estoppel under Florida state law, require that: (1) the parties must be identical; (2) the issues must be identical; and (3) the matter has been

844

fully litigated in a court of competent jurisdiction. *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano,* 450 So.2d 843, 845 (Fla.1984); *Mobil Oil Corp. v. Shevin,* 354 So.2d 372, 374 (Fla.1977); *Daniel Int'l Corp. v. Better Constr., Inc.,* 593 So.2d 524, 527 (Fla.Dist.Ct.App.1991), *review denied, Better Constr., Inc. v. Daniel Int'l Corp.,* 602 So.2d 941 (Fla.1992); *West Point Constr. Co. v. Fidelity and Deposit Co.,* 515 So.2d 1374, 1376 (Fla.Dist.Ct.App.1987).

■ The identity of the parties element is satisfied. The state court judgment in this case was in favor of the plaintiff Gaydens and against the defendant Nourbakhsh. In the bankruptcy court, the plaintiff Gaydens sued the defendant Nourbakhsh. Similarly, the issues addressed in the state court are identical to the issues before the bankruptcy court. The elements of common law fraud under Florida law "closely mirror the requirements of 523(a)(2)(A) and, hence are sufficiently identical ... to meet ... the test for collateral estoppel." *In re Seifert,* 130 B.R. 607, 609 (Bankr.M.D.Fla.1991) (quoting *In re Powell,* 95 B.R. 236 (Bankr.S.D.Fla.1989), *aff'd,* 108 B.R. 343 (S.D.Fla.1989), *aff'd without opinion,* 914 F.2d 268 (11th Cir.1990).

Finally, the issue of fraud was determined and fully litigated in a Florida State Court pursuant to Florida state law. We recognize the considerable divergence in the courts with respect to whether the entry of a default judgment is tantamount to having a matter "actually litigated." *Compare, e.g., In re McMillan,* 579 F.2d 289 (3d Cir.1978); *and Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *with In re Marsowicz,* 120 B.R. 602 (Bankr.S.D.Fla.1990); *In re Heuser,* 127 B.R. 895 (Bankr.N.D.Fla.1991); *In re Seifert,* 130 B.R. 607 (Bankr.M.D.Fla.1991); *and In re Arguez,* 134 B.R. 55 (Bankr.S.D.Fla.1991). However, we do not need to analyze the standard in other jurisdictions for persuasive authority. The Supreme Court in *Marrese* specifically stated that the full faith and credit statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered. *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1331. Accordingly, only an analysis of Florida's preclusion law is relevant to the outcome in this case.

In Florida, "a default judgment conclusively establishes between the parties ... the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment, but such judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the default judgment." *Perez v. Rodriguez,* 349 So.2d 826, 827 (Fla.Dist.Ct.App.1977); *Baum v. Pines Realty, Inc.,* 164 So.2d 517, 522 (Fla. Dist.Ct.1964); *see also, Masciarelli v. Maco Supply Corp.,* 224 So.2d 329, 330 (Fla.1969). Additionally, "for purposes of res judicata, a judgment entered upon default is just as conclusive as one which was hotly contested." *Cabinet Craft, Inc. v. A.G. Spanos,* 348 So.2d 920, 922 (Fla.Dist.Ct.App.1977); *see also, Martino v. Florida Ins. Guaranty Assoc.,* 383 So.2d 942, 944 (Fla.Dist.Ct.App.1980). Based upon the preceding language, we find that a Florida State Court would hold that the entry of a default judgment is tantamount to a dispute that has been "actually litigated."

Our interpretation of Florida law is supported by four bankruptcy opinions emanating from three districts in Florida that directly address the standard for issue preclusion in a Florida State Court. First, the court in *In re Marsowicz,* 120 B.R. 602 (Bankr.S.D.Fla.1990), stated that "the fact that a default was entered against the debtors in the state court action will not preclude this Court from applying collateral estoppel to the state court judgment." *Marsowicz,* 120 B.R. at 604 (the *Marsowicz* court cited to three of the Florida cases discussed *supra, Baum, Perez,* and *Cabinet Craft* ).

Second, the court in *In re Heuser,* 127 B.R. 895 (Bankr.N.D.Fla.1991), stated that:

The plaintiff in this case has received a default judgment finding that the debtor obtained the funds by use of false pretenses or false representations; he willfully and maliciously converted those funds; and, he obtained the funds with the intent to appropriate the money for his own use, thereby damaging the plaintiffs. Whereas the plaintiff alleges the same facts as alleged in the state court action, the debtor is precluded, under Florida law, from rais-

ing any defense to the plaintiff's dischargeability action. Consequently the plaintiff is entitled [to a summary judgment.]

*Heuser,* 127 B.R. at 898 (the *Heuser* court cited two of the Florida cases discussed *supra, Perez* and *Martino* ).

Third, the court in *In re Arguez,* 134 B.R. 55 (Bankr.S.D.Fla.1991), stated that "the fact that a default was entered against the DEBTORS in the State Court action will not preclude this Court from applying collateral estoppel to the State Court judgment." *Arguez,* 134 B.R. at 58. The *Arguez* court compared the elements under 11 U.S.C. § 523(a)(2)(A) with the findings entered in the default judgment and held that "[t]he requirements of Florida collateral estoppel have been satisfied so as to preclude the relitigation of the issues conclusively adjudicated in the State Court by virtue of the default and final judgment." *Arguez,* 134 B.R. at 59 (the *Arguez* court cited three of the Florida cases discussed *supra, Baum, Perez,* and *Cabinet Craft* ).

Finally, the court in *Seifert* stated that " 'actually litigated' only contemplates that the defendant have been given a full opportunity to defend himself." *In re Seifert,* 130 B.R. 607, 609 (Bankr.M.D.Fla.1991). In *Seifert,* the defendants chose not to answer the state court complaint and a default judgment ensued. The court went on to state that the judgment should not be discounted because of the plaintiff's decision not to participate in the state court case. *Seifert,* 130 B.R. at 609.

We must next determine whether there is an exception to granting the state court default judgment full faith and credit pursuant to 28 U.S.C. § 1738. The Supreme Court in *Marrese* stated that even if the federal court must grant preclusive effect to a state court judgment, the federal court shall avoid preclusion if there is an exception to 28 U.S.C. § 1738: the full faith and credit statute. *Marrese,* 470 U.S. at 381, 105 S.Ct. at 1332. The Court proposed two potential exceptions: (1) a subsequently enacted statute that either expressly or impliedly repeals § 1738; and (2) a judicially created exception in circumstances where the state law indicates that litigation of a particular claim or issue should be barred in a subsequent federal proceed-

ing. *Marrese,* 470 U.S. at 380 & 383, 105 S.Ct. at 1331 & 1333.

We have not found nor has Nourbakhsh cited to any authority indicating that § 1738 has been repealed by statute. The court in *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn. 1985), stated that the exception to full faith and credit is limited:

There is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment.

*Byard,* 47 B.R. at 707. Similarly, we decline to take this opportunity to fashion an exception to Florida's collateral estoppel law. The *Byard* court stated that:

The implied repealer of § 1738 in bankruptcy proceedings recognized by the Supreme Court in *Brown* and acknowledged by the Supreme Court in *Marrese* was restricted by the Supreme Court in *Brown* to claim preclusion. *Since the decision in Brown, the implied repealer exception to § 1738 has been very narrowly construed by the Supreme Court.*

*Byard,* 47 B.R. at 707 (emphasis added) (citation omitted).

Nourbakhsh argues that *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), stands for the proposition that when nondischargeability of a debt based on fraud is an issue, the bankruptcy court is not precluded by a state court judgment from litigating the issue. Consequently, Nourbakhsh argues that the bankruptcy court incorrectly gave preclusive effect to the state court's finding of fraud and granting summary judgment.

However, in *Brown,* the state court did not adjudicate the issue of fraud. Judgment was solely based on a stipulation providing for recovery. *Brown,* 442 U.S. at 128, 99 S.Ct. at 2207. The debtor in *Brown* argued that because the creditor did not specifically litigate whether the debt was incurred by fraud in state court, the creditor was precluded from determining the issue in bankruptcy court. The court disagreed with this analysis. Instead, the Court ruled that the bank-

ruptcy court was not bound by res judicata. The Court explained that the issue of fraud was never litigated and was now "for the first time, squarely in issue." *Brown,* 442 U.S. at 138, 99 S.Ct. at 2212.

Here, unlike in *Brown,* the Florida State Court determination was not based on a settlement agreement. A complaint for fraud was filed, both sides were present at a hearing to determine personal jurisdiction and the entry of default. Interrogatories to Nourbakhsh were answered. Moreover, as previously discussed, according to Florida law, the issue of fraud can be determined regardless of whether a default judgment is entered. Thus, the bankruptcy court was not determining the issue of fraud for the first time. Consequently, the bankruptcy court correctly applied issue preclusion and we decline to create an exception to the implementation of 28 U.S.C. § 1738.

## II. *The Florida State Court Sufficiently Evaluated the Evidence to Enter a Default Judgment Based on the Elements of Fraud*

■ Having concluded that Florida law does not preclude a court from applying collateral estoppel to the state court default judgment, we look to the process leading to the entry of the default judgment to insure that the elements of fraud were adequately established. Nourbakhsh argues that the bankruptcy court should not apply collateral estoppel because of obvious injustice. He points out that he could not afford to travel to Florida nor hire an attorney to represent him at the hearing. However, he provides no evidence other than his own affidavit.

The facts, however, are that the Gaydens filed a complaint for fraud against Nourbakhsh in Florida State Court. Nourbakhsh's counsel filed a motion to dismiss the complaint for lack of jurisdiction. At the hearing, Nourbakhsh's counsel argued the merits of the complaint and presented evidence concerning the motion to dismiss. The Florida State Court determined that it had personal jurisdiction over Mr. Nourbakhsh. Soon thereafter, Nourbakhsh served answers to interrogatories supplied by the Gaydens.

The Florida State Court then held two hearings pertaining to the default. First, on October 28, 1988 the state court held a hearing on the Gaydens' motion to enter default for failing to answer the complaint within 20 days. The Gaydens maintain Nourbakhsh's attorney made his last appearance before the state court at this hearing. The court granted this motion.

Second, the state court held a prove-up hearing on November 9, 1988 and entered the default judgment on December 15, 1988. The state court submitted the following findings of fact in the judgment after default:

(1) Nourbakhsh engaged in a scheme to defraud with systematic solicitations and false representations that they would sell to the Gaydens precious metals according to a secured layaway program and wanton disregard of Plaintiffs rights;

(2) Nourbakhsh's actions constituted a pattern of criminal activity;

(3) Nourbakhsh's action constituted a pattern of racketeering activity in that each act was done with the same intent, result and purpose to defraud and injure the Gaydens; and

(4) Nourbakhsh in the course of his scheme to defraud exacted illegal, unbargained for fabricated charges.

Given the extent of Nourbakhsh's involvement in the case and the procedure implemented by the Florida court prior to entering the default judgment, we find that the elements under 11 U.S.C. § 523(a)(2)(A) have been satisfied.

### CONCLUSION

■ After the Florida State Court issued a default judgment against Nourbakhsh based on a complaint for fraud, the bankruptcy court correctly precluded Nourbakhsh from litigating the issue of fraud pursuant to 11 U.S.C. § 523(a)(2)(A). Following the Supreme Court in *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), a Florida State Court would give preclusive effect to a state court default judgement based on fraud and no federal exception to § 1738 applies. Therefore, we affirm the bankruptcy court's decision to apply issue

preclusion pursuant to 28 U.S.C. § 1738 and grant summary judgment.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent. The majority has totally missed the point of this appeal. 28 U.S.C. § 1738 does not require the application of Florida law to determine the preclusion effect of a Florida default judgment in a dischargeability proceeding pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).

## I.

### DEFAULT JUDGMENTS ARE NOT ENTITLED TO COLLATERAL ESTOPPEL EFFECT IN DISCHARGEABILITY PROCEEDINGS

Default judgments are not entitled to collateral estoppel effect in dischargeability proceedings because the issues were not "actually litigated." In addition, it is clear that while 28 U.S.C. § 1738 generally requires federal courts to afford the same full faith and credit to a state court judgment, as would apply in that state, dischargeability proceedings provide an exception to the applicability of § 1738.

In *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983), the Court stated:

It is true that some types of judgments are not given collateral estoppel effect because the court did not get the benefit of deciding the issue in an adversarial context. In the case of a default judgment, for example, a party may decide that the amount at stake does not justify the expense and vexation of putting up a fight. The defaulting party will certainly lose that lawsuit, but the default judgment is not given collateral estoppel effect. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *Commonwealth of Massachusetts v. Hale*,

618 F.2d 143, 146 (1st Cir.1980); *Matter of McMillan*, 579 F.2d 289, 293 (3d Cir.1978). *Gottheiner*, 703 F.2d at 1140.

Indeed, four circuits, the Ninth in *Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983), the Sixth in *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981), the Third in *Matter of McMillan*, 579 F.2d 289, 292 (3rd Cir.1978), and the Fourth in *In re Raynor*, 922 F.2d 1146, 1150 (4th Cir.1991) have specifically held in the context of bankruptcy dischargeability proceedings that default judgments are not entitled to collateral estoppel effect.[1]

To reduce the "actually litigated" requirement into a mere "opportunity to litigate," as the majority of the Panel in this case holds, is to turn the doctrine on its head. If a default judgment satisfies the "actually litigated" requirement, it is hard to imagine any case, under that standard, that is not actually litigated. Clearly, if a mere "opportunity to litigate" were sufficient, as is the case with *res judicata*, the elements of collateral estoppel would not expressly require "actual litigation." The words taken on their plain meaning cannot reasonably be construed to mean a "mere opportunity to litigate."

In this case before us, no actual litigation on the merits took place. It is surprising that the majority concluded that the proceeding was "fully litigated." If this is true, then an actual trial with the debtor represented would be "super" fully litigated. The debtor, Nourbakhsh purely defaulted. The facts are undisputed. Nourbakhsh resided in Southern California. The lawsuit was filed in Florida. Through an attorney, Nourbakhsh unsuccessfully attempted to contest personal jurisdiction of the Florida state court. At some point thereafter, Nourbakhsh's attorney in Florida withdrew because Nourbakhsh was unable to pay the fee demanded. No other work was performed on Nourbakhsh's case. Other than having submitted

---

1. The Eleventh Circuit in *In re St. Laurent*, 991 F.2d 672 (11th Cir.1993), in *dictum* noted that in a dischargeability proceeding that the collateral estoppel law of the state rendering the judgment must be applied. The entire discussion on this point is the following:

If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judg-

ment's preclusive effect. *In re Touchstone*, 149 B.R. 721, 725 (Bankr.S.D.Fla.1993).

*In re St. Laurent*, 991 F.2d at 675–76.

The applicability of 28 U.S.C. § 1738 was clearly never an issue, probably because there was an actual trial in the state court and the remaining elements of collateral estoppel under the state law were the same as under federal law.

written answers to certain interrogatories without the assistance of counsel, Nourbakhsh had no further involvement. Nourbakhsh did not file an answer, conduct discovery or present evidence. He made no personal appearances in the Florida case. Nourbakhsh indicated, in his affidavit before the bankruptcy court, that he could not fly to Florida to defend himself or hire another attorney because he lacked the funds to do so. A default judgment was entered by the Florida court.[2]

It cannot realistically be said that this matter was actually litigated. The record before us regarding the Florida default judgment merely contained the original complaint and attached exhibits. The record contained no declarations. The majority erroneously believes that the Florida court's findings of fact in the default judgment were actually decided. However, this appears to be no more than a classic default judgment, where it is not unusual to find the judgment prepared by the successful plaintiff. Collateral estoppel cannot rightfully be applied to this type of judgment.

What is surprising about the majority's decision is that it entirely relies on several decisions of bankruptcy judges and totally ignores the unanimous contrary circuit court authority. Amazingly, the majority does not even bother to acknowledge that there is contrary authority. The majority ignores the clear majority of cases that hold that a default judgment is not entitled to collateral estoppel effect in dischargeability proceedings, at least as to §§ 523(a)(2), (4) & (6), because the issues were not actually litigated. *See Matter of McMillan,* 579 F.2d 289, 292 (3rd. Cir.1978); *In re Raynor,* 922 F.2d 1146, 1150 (4th Cir.1991); *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981); *In re Gottheiner,* 703 F.2d at 1140; *In re Joseph,* 22 B.R.

---

2. I am not fully convinced that the majority is correct to conclude that the Florida law of collateral estoppel bars future litigation of issues raised in a default judgment. The majority cites cases which either do not provide binding interpretations of Florida law, or only offer *dicta,* not holdings, to support its view. For example, while it might be persuasive to a Florida state court, *In re Seifert,* 130 B.R. 607 (Bankr.M.D.Fla. 1991), does not bind a state court in matters of purely Florida law. *See, e.g., Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Nor does *Seifert* rely on any Florida case law. The other case cited by the majority, *In re Marsowicz,* 120 B.R. 602 (Bankr. S.D.Fla.1990), does rely on Florida cases, *e.g., Perez v. Rodriguez,* 349 So.2d 826 (Fla.Dist.Ct. App.1977); *Baum v. Pines Realty, Inc.,* 164 So.2d 517 (Fla. Dist.Ct.App.1964), but those cases only support the majority's view in *dicta. Perez,* for example, held that an issue was *not* precluded from litigation in a subsequent lawsuit between the parties. Thus, the holding of *Perez* offers no direct support for the majority's conclusion. It is true that *Perez,* citing another Florida case, mentions in *dicta* that an earlier "default judgment conclusively establishes [in a subsequent action] ... the truth of all material allegations contained in the complaint in the [earlier default judgment] and every fact necessary to uphold the [earlier] default judgment." *Perez,* 349 So.2d at 827 (citing *Baum,* 164 So.2d at 522). But, like *Perez, Baum* is a case which held that collateral estoppel did *not* bar litigation of an issue between the parties in a subsequent lawsuit. Thus, neither *Baum* nor *Perez* directly hold for the majority's view. Admittedly, these courts suggest, but do not hold, that were the issue before them, they would apply collateral estoppel to default judgments. But, given the variety of opinions non-Florida courts have about this question, *compare, e.g., Matter of Cassidy,* 892 F.2d 637 (7th Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) and *In re Dvorak,* 118 B.R. 619 (Bankr.N.D.Ill.1990) and *In re Sharp,* 119 B.R. 779 (Bankr.D.Idaho 1990) with *In re Stowell,* 102 B.R. 589 (Bankr.W.D.Tex. 1989) and *In re Bennett,* 80 B.R. 800 (Bankr. E.D.Va.1988), I cannot assume, without more direct authority, that this debatable question is entirely settled. The closest a Florida court has come to squarely addressing this question is *Masciarelli v. Maco Supply Corp.,* 224 So.2d 329 (Fla.1969). *Masciarelli* purports to apply "estoppel by judgment," a synonym for collateral estoppel, to a default judgment. However, the true basis for the court's holding may have been *res judicata. Masciarelli* relies for its holding on *Avant v. Hammond Jones Inc.,* 79 So.2d 423 (Fla.1955), a case which enunciates a collateral estoppel analysis, but defines collateral estoppel in terms of *res judicata.* For example, the *Avant* court applies the "opportunity to litigate" standard, the hallmark of *res judicata,* in order to arrive at its conclusion that a certain claim is barred. "We conclude that the appellant was estopped to maintain an action in trover [the claim raised in a later lawsuit] when he had had abundant opportunity to isolate for adjudication the claim he now makes...." *Id.* at 424. This *res judicata* case, belies the Court's stated application of "estoppel by judgment." To the extent *Avant* is truly a *res judicata* case, it suggests that *Masciarelli* too is a *res judicata* case mislabeled as a case about collateral estoppel. If so, then there is no Florida authority directly on point about the collateral estoppel effect of default judgments.

319, 321 (Bankr.E.D.N.Y.1982); *In re Iannelli*, 12 B.R. 561, 563 (Bankr.S.D.N.Y.1981); *In re Bishop*, 55 B.R. 687, 689 (Bankr. W.D.Ky.1985); *In re Myers*, 52 B.R. 901, 903, n. 1 (Bankr.E.D.Va.1985); *In re Anderson*, 49 B.R. 655, 656 (Bankr.W.D.Wis. 1984); *In re Anderson*, 30 B.R. 229, 232 (Bankr.S.D.Fla.1983); *In re Morrison*, 119 B.R. 135, 140 (Bankr.E.D.Tenn.1990); *In re Louis*, 49 B.R. 135, 138 (Bankr.E.D.Wis. 1985); *In re Boyovich*, 126 B.R. 348, 350 (Bankr.W.D.Wash.1991); *In re Dvorak*, 118 B.R. 619, 624–25 (Bankr.N.D.Ill.1990); *In re Sharp*, 119 B.R. 779, 782 (Bankr.D.Idaho 1990); *In re Stiles*, 118 B.R. 81, 85–86 (Bankr.W.D.Tenn.1990); *In re Stowell*, 113 B.R. 322, 329 (Bankr.W.D.Tex.1990); *In re Martinez*, 110 B.R. 353, 355–56 (Bankr. N.D.Ill.1990); *In re Hall*, 95 B.R. 553, 558 (Bankr.E.D.Tenn.1989); *In re Billings*, 94 B.R. 803, 808 (Bankr.E.D.N.Y.1989); *In re Durrance*, 84 B.R. 238, 239 (Bankr.M.D.Fla. 1988); *See* B. Russell, *Bankruptcy Evidence Manual*, § 9 (1993 Ed.).

The leading and most often cited case dealing with the preclusive effect of prior default judgments in dischargeability proceedings is *Matter of McMillan*, 579 F.2d 289, which held that a prior state court default judgment was not "actually litigated" and therefore not entitled to collateral estoppel effect. The Third Circuit concluded:

> In any case, we conclude that, because the bankrupts did not "actually litigate" the Ocean County case, not even facts which were necessary to that judgment can collaterally estop them from relitigating the same issues in the bankruptcy case. This holding is consistent both with general rules of collateral estoppel and with the federal policies in bankruptcy cases.

*Matter of McMillan*, 579 F.2d at 292.

The Third Circuit further stated:

> Clearly, adoption of the result urged upon us by the appellant—giving full collateral estoppel effect to all facts· necessarily determined by a prior default judgment would in bankruptcy court determinations under § 17a(2)—

**3.** 28 U.S.C. § 1738 was enacted on June 25, 1948, Ch. 646, 62 Stat. 947, based on Title 28

> "... necessarily defeat a major federal policy of granting exceptions to discharge only in certain circumstances specified by the [B]ankruptcy Act.... The court also wishes to point out that creditors should not be encouraged to go into state courts prior to bankruptcy seeking default judgments based upon fraud. Such a circumstance would create an injustice greater than that which the 1970 amendments were intended to cure." (quoting Opinion of the Bankruptcy Judge).

*Matter of McMillan*, 579 F.2d at 293.

It is clear that the Third Circuit was well aware of § 1738.[3] Judge Gibbons in his concurring opinion stated:

> The issue in this case is whether a finance company holding the same type of debt can evade the congressional intent by securing a state court judgment against a delinquent borrower in anticipation of his bankruptcy. I think the answer should be no, and that we should admit an exception to the federal duty to recognized state court judgments imposed by § 1738. When Congress expressly identifies an abuse, when it has ·the constitutional power to correct it, and when as here it exercises that power, then the courts should give the congressional act its full effect. While I agree with the majority's analysis as far as it goes, I would prefer to rest the affirmance on this more fundamental reason.

*Matter of McMillan*, 579 F.2d at 294 (Gibbons, J., concurring).

The majority of the Panel relies heavily on *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn. 1985). *Byard* is clearly a minority position and is contrary to its own circuit's opinion in *Spilman v. Harley*, 656 F.2d at 228 which held:

> *If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court.* See *Commonwealth of Massachusetts v. Hale*, 618 F.2d

U.S.C. § 687 (1940 ed.) (R.S. § 905).

143, 146 (1st Cir.1980); *Matter of McMillan,* 579 F.2d 289, 293 (3rd Cir.1978); [*Matter of*] *Pigge, supra,* 539 F.2d [369] at 373 [ (4th Cir.1976) ]; *In re Cooney,* 8 B.R. 96, 98–99 (Bankr.W.D.Ky.1980); *In re Richards,* 7 B.R. 711, 714 (Bankr.S.D.Fla. 1980); *In re Ashley,* 5 B.R. 262, 264 (Bankr.E.D.Tenn.1980); *In re McKenna,* 4 B.R. 160, 162 (Bankr.N.D.Ill.1980); *Matter of Mallory,* 1 B.R. 201, 202 (Bankr.N.D.Ga. 1979). (emphasis added).

In effect the Sixth Circuit, which includes the *Byard* court, agrees with *McMillan* and the majority does not agree. Given this clear mandate by the Sixth Circuit, it is not surprising that three Tennessee bankruptcy courts have specifically disagreed with *Byard. In re Stiles,* 118 B.R. 81 (Bankr. W.D.Tenn.1990); *In re Morrison,* 119 B.R. 135 (Bankr.E.D.Tenn.1990); and *In re Hall,* 95 B.R. 553 (Bankr.E.D.Tenn.1989).

Indeed, a judge from the same district as the *Byard* court clearly and correctly stated the law in *In re Stiles,* 118 B.R. at 85:

> However, both before and after the *Byard* decision, the Sixth Circuit Court of Appeals has discussed the effect to be given state court judgments in the bankruptcy context and in doing so has instructed that in order for collateral estoppel principles to apply, the issues which form a basis for a finding of nondischargeability must have been actually litigated and necessary to the judgment in the prior adjudication. *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986); *Spilman v. Harley,* 656 F.2d at 228. In fact, in *Spilman,* the Court expressly stated:
>
> > If the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court. (emphasis added).
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Obviously, the Sixth Circuit has construed the "actually and necessarily decided" language of *Brown v. Felsen* to mean "actually litigated." *Contra, In re Byard,* 47 B.R. at 704, n. 3. Consequently, this Court is compelled to follow the Sixth Circuit's

mandate that in order for collateral estoppel to apply in this context, the issues must have been actually litigated and necessary to the prior adjudication. This same conclusion has been reached in recent decisions from Bankruptcy Courts for the Eastern District of Tennessee. *See, In re Hall,* 95 B.R. 553 (Bankr.E.D.Tenn.1989); *In re Morrison,* [119 B.R. 135 (Bankr. E.D.Tenn.1990) ]; *In re Gatlinburg Motel Enterp., Ltd.,* 106 B.R. 492 (Bankr. E.D.Tenn.1989).

*In re Stiles,* 118 B.R. at 85.

The court in *In re Hall* again specifically disagreed with the *Byard* decision:

> As to *Spilman v. Harley,* the bankruptcy court in *Byard* took the view that, if the court of appeals were faced with the problem again, it would follow the later Supreme Court cases to the conclusion that state law controlled and gave collateral estoppel effect to the default judgment. However, after *Byard* was decided, the court of appeals applied the federal rules of collateral estoppel that it set out in *Spilman v. Harley.* The court of appeals did not look to state law to determine the collateral estoppel effect of an earlier state court judgment. *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986). The court of appeals did not discuss the issue in detail and did not mention *Byard,* but its decision could be taken as disapproval of the result in *Byard* and reaffirmation of the federal rules of collateral estoppel that were set out in *Spilman v. Harley.*
>
> In any event, this court disagrees with the decision in *Byard* that there is no federal justification for an exception to the rule that state law determines the preclusive effect of a state court judgment.

*In re Hall,* 95 B.R. at 555.

And finally, the court in *Morrison* in disagreeing with *Byard* concluded:

> This court observes, however, as did Chief Bankruptcy Judge Ralph Kelley in *Hall,* 95 B.R. at 555, that after *Byard* was decided, the Sixth Circuit applied the identical rules of collateral estoppel enunciated in *Spilman* to the state court judgment before it in *Laudani.* The Sixth Circuit in *Laudani* did not mention *Byard* nor did it

discuss the Supreme Court decisions relied upon by Judge Lundin. Instead, it reaffirmed the collateral estoppel rules enunciated in *Spilman*. This court will adhere to the principles enunciated by the Sixth Circuit in *Spilman* and *Laudani*.

*In re Morrison*, 119 B.R. at 141.

## II.

*THE UNITED STATES SUPREME COURT HAS STRONGLY SUGGESTED THAT DISCHARGEABILITY PROCEEDINGS ARE AN EXCEPTION TO THE APPLICABILITY OF 28 U.S.C. § 1738*

### A. *BROWN v. FELSEN*

The Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1978), held that principles of *res judicata* did not prevent a creditor from offering evidence, in addition to the state court record, in dischargeability proceedings. In footnote 10, the Court left for another day whether collateral estoppel would apply in dischargeability proceedings. The Supreme Court decided this question in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) where, in addition to holding that the proper burden of proof in dischargeability proceedings is the "preponderance of evidence," the Supreme Court merely held that "[w]e now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, 498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11. The Supreme Court did not hold that a default judgment qualified for collateral estoppel effect. The majority's reliance on *Grogan v. Garner* is therefore misplaced.

The Supreme Court in *Brown* however did clearly state that dischargeability proceedings deal with very special federal interests to be decided by federal bankruptcy courts:

> If a state court should expressly rule on § 17 [now § 523] questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 amendments eliminated postbankruptcy state-court collection suits as a means of resolving certain § 17 discharge-

ability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. *See In re McMillan*, 579 F.2d 289, 293 (3rd Cir.1978); *In re Houtman*, 568 F.2d 651, 654 (9th Cir.1978). (footnote omitted) (additional citations omitted).

*Brown*, 442 U.S. at 135–36, 99 S.Ct. at 2212.

It is significant that although the majority of the Panel disagrees with *Matter of McMillan*, the unanimous Supreme Court in *Grogan*, felt that it was significant in demonstrating the special nature of dischargeability proceedings in bankruptcy courts.

The Ninth Circuit has consistently made it clear that because of the special nature of dischargeability proceedings they should be decided by the bankruptcy court. In *In re Houtman*, 568 F.2d 651 (9th Cir.1978) (also cited by *Brown v. Felsen*) the Ninth Circuit held that:

> The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4),

and (8) of the Bankruptcy Act. (footnote omitted).

*Houtman,* 568 F.2d at 653.

The court further held:

> To give collateral estoppel effect to prior state court factual findings would impair the exercise of the expertise of the bankruptcy court. The determination of nondischargeability should remain an exclusive function of the bankruptcy court unimpeded by the refinements of collateral estoppel by state court judgments.

*Houtman,* 568 F.2d at 654, n. 2.

Although the Supreme Court in *Grogan v. Garner* held that collateral estoppel applied in dischargeability proceedings, *Houtman* still strongly supports the proposition that dischargeability proceedings are an exception to 28 U.S.C. § 1738.

The special federal concern in this case is the same as in *Brown v. Felsen.* Here the creditor, rather than the debtor, is asking the court to give preclusive effect to a pre-bankruptcy judgment, so as to require the debtor to litigate issues in state court before the bankruptcy, in order to preserve the issue of its dischargeability of the debt. Requiring either the debtor or creditors to litigate before bankruptcy in order to preserve the issue of dischargeability of debts is contrary to the policy behind the bankruptcy laws.

## B. *MARRESE v. AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS*

*Marrese v. American Academy of Ortho. Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1984), *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985) concerned the preclusive effect of a state court judgment in a subsequent lawsuit involving federal antitrust claims within the exclusive jurisdiction of the federal courts. The Seventh Circuit held that as a matter of federal law, the prior state court judgment barred the federal antitrust suit under principles of *res judicata.* Because the lower courts did not consider the effect of state preclusion law, the case was reversed and remanded.

In remanding, the Supreme Court held, "[w]e are unwilling to create a special exception to § 1738 for federal antitrust claims that would give state court judgments *great-*er preclusive effect than would the courts of the State rendering the judgment." (emphasis added). *Marrese,* 470 U.S. at 384, 105 S.Ct. at 1334.

The Supreme Court specifically addressed the issue, before us, of whether an exception should apply to § 1738 to allow for *lesser* preclusive effect in a federal court than would the courts of the state rendering the judgment. Acknowledging that there might be such an exception for federal antitrust claims, in view of the remand, it left for another day the determination of this issue. The Court stated:

> In this case the Court of Appeals should have first referred to Illinois law to determine the preclusive effect of the state judgment. Only if state law indicates that a particular claim or issue would be barred, is it necessary to determine if an exception to § 1738 should apply. *Although for purposes of this case, we need not decide if such an exception exists for federal antitrust claims, we observe that the more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress.* See *Kremer, supra,* at 470–76 (finding no congressional intent to depart from § 1738 for purposes of Title VII); *cf. Brown v. Felsen,* 442 U.S. 127, 138 [99 S.Ct. 2205, 2212, 60 L.Ed.2d 767] (1979) *(finding congressional intent that state judgment would not have claim preclusive effect on dischargeability issue in bankruptcy*) (emphasis added).

*Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335.

The Supreme Court's specific reference to *Brown v. Felsen,* clearly indicates that congressional intent regarding dischargeability may support an exception to § 1738.

## III.

## CONCLUSION

The Supreme Court, in *Brown v. Felsen,* cited one of the abuses which Congress

sought to curb: "The 1970 amendments eliminated post-bankruptcy state collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse." *Brown v. Felsen*, 442 U.S. at 135–36, 99 S.Ct. at 2212. The majority in this appeal leave open a similar abuse. As in the case here, an individual debtor, who lacks the funds to defend a suit in a remote forum may be compelled to default. Where there is a complete default, as is the case here, a debtor should not be bound by one-sided, unchallenged allegations which would summarily deny him the discharge of the debt. It furthers no congressionally intended purpose to find a debt nondischargeable based on a default judgment issued in a remote forum, all in the name of "full faith and credit." To advance the congressional policy behind § 523 in securing a debtor's chance at obtaining a discharge of debts, an exception to 28 U.S.C. § 1738 is warranted. A default judgment in and of itself is an insufficient basis for determining a debt to be nondischargeable. Therefore, I would REVERSE.